**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

v.

WALTER MERLE OVERTON,
          *Defendant-Appellant.*

No. 08-30075

D.C. No.
2:07-CR-00028-
DWM

ORDER AND
AMENDED
OPINION

Appeal from the United States District Court
for the District of Montana
Donald W. Molloy, District Judge, Presiding

Argued and Submitted
January 21, 2009—Seattle, Washington

Filed June 18, 2009
Amended July 14, 2009

Before: Thomas M. Reavley,* Senior Circuit Judge,
Richard C. Tallman and Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Tallman

---

*The Honorable Thomas M. Reavley, Senior United States Circuit Judge for the Fifth Circuit, sitting by designation.

## COUNSEL

Anthony R. Gallagher, Office of the Federal Public Defenders for the District of Montana, Great Falls, Montana, for the defendant-appellant.

Eric B. Wolff (argued), Marcia Hurd, Assistant United States Attorneys, and William W. Mercer, United States Attorney for the District of Montana, Billings, Montana, for the plaintiff-appellee.

## ORDER

The Opinion filed on June 18, 2009, is AMENDED as follows:

The term "natural" appearing in the second paragraph of Section I of the slip opinion appearing at page 7282, is DELETED and REPLACED with the term "biological."

The Clerk of the Court is hereby instructed to issue the mandate in accordance with Federal Rule of Appellate Procedure 41.

## OPINION

TALLMAN, Circuit Judge:

Following a two-day bench trial before the Honorable Donald W. Molloy in the District of Montana, Walter Merle Overton was convicted on two counts of sexual exploitation of a minor in violation of 18 U.S.C. § 2251(a) and (b), and on separate counts of receipt of child pornography and possession of child pornography in violation of 18 U.S.C. § 2252A(a)(2) and (a)(5)(B), respectively. The district court sentenced Overton to a term of incarceration of 235 months, to be followed by a lifetime of supervised release.

Overton advances several arguments on appeal. He contends (1) that there was insufficient evidence to support a conviction on the sexual exploitation counts, (2) that his conviction on the multiple counts violated the Fifth Amendment's prohibition against double jeopardy, and (3) that the district court committed reversible error in imposing his sentence. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

## I

On June 5, 2006, an 18-year-old female, JNW, walked into a Manhattan, Montana bank, and disclosed to a teller that she had been raped earlier that morning by her stepfather, who was waiting outside. The bank teller immediately alerted the local sheriff's office. Deputies responded and arrested Walter Merle Overton.

Early that morning, Overton and his wife Laura Nelson Overton, JNW's biological mother ("Nelson"), left home for work at Montana State University ("MSU") in Bozeman, where they were both employed. Overton, however, surreptitiously made his way back to their house that morning.[1] Overton entered JNW's bedroom and, finding his stepdaughter alone in the house and still in bed, told her to remove her clothes.[2] In addition to engaging in sexual contact, he took nude pictures of her with a digital camera in various rooms of the house.

While in custody and after waiving his *Miranda* rights, Overton admitted to engaging in various sexual acts with his stepdaughter. The Gallatin County Sheriff's Office began an investigation and later the Federal Bureau of Investigation became involved.[3] The subsequent investigation resulted in the discovery of large quantities of electronically-stored pornographic images, many depicting children (which Overton had downloaded from the Internet), and nude pictures of JNW (which he had taken himself), all of which led to the federal charges and Overton's conviction now before us.

As he did on the morning of June 5, Overton had taken nude photographs of his stepdaughter on at least two prior occasions. The first of these incidents took place in about March 2005 when JNW was 17 years old and a minor. On this occasion, Overton confronted her with a camera and insisted that "a family should be closer and sexuality shouldn't be a big deal" and that JNW "shouldn't be afraid of [her] body." JNW ultimately acquiesced and allowed him to take nude

---

[1]At all times material to this appeal, JNW lived with her mother and Overton at their home in Manhattan.

[2]JNW testified at trial that Overton entered her room and told her that this could either "be an enjoyable experience or a life threatening one."

[3]Overton was initially charged with incest in Gallatin County state court. The state charges were dismissed in favor of this federal prosecution.

photographs of her in various poses in both his bedroom and the living room. Overton later loaded the photographic images of JNW onto his home computer.

JNW later divulged to her mother what had occurred. Nelson confronted Overton, who admitted that he had photographed JNW and showed her at least one of the images. Nelson demanded that he dispose of the pictures and imposed a rule that Overton should not be alone with JNW in the future. Contrary to the assurances provided to his wife, Overton copied the homemade images of his minor stepdaughter to a memory device and transferred them to his work computer at MSU. Unbeknownst to Nelson or JNW, he later reinstalled the illicit images of JNW onto the home computer.

In February 2007, Overton, with counsel present, was interviewed by FBI Special Agents Kevin Damuth and John Sorensen as part of the federal investigation. During that meeting Overton admitted that he routinely downloaded pornography, including child pornography, from the Internet, which he then saved to special directory folders on his home and work computers. He described his use of the MSU computer system, through which he accessed the Internet and searched free online pornography sites using suggestive search terms such as "teens." Overton admitted that he became sexually aroused when viewing these images and characterized his conduct as an "addiction."

Overton also told the agents that he had taken nude pictures of JNW on three separate occasions in 2005 and 2006. He then transferred those photographs from his digital camera to his computers, saving them in folders similar to those in which he placed the downloaded pornographic images. Overton also identified five photographs that were taken when JNW was 17 years old. At their request, Overton provided a written statement, confirming his admissions to the FBI agents.

Law enforcement discovered large quantities of pornography and illicit material on his home and work computers. A search of Overton's two work computers, for example, revealed over six gigabytes of images and video including pornography. Overton had created an "F" partition on the hard drive where he stored pornographic images, depicting both adults and children. The investigation also uncovered the homemade images of JNW.

In July 2007, a Grand Jury indicted Overton, charging him with four federal crimes. Counts I and II charged Overton with the sexual exploitation of a minor in violation of 18 U.S.C. § 2251(a) and (b), respectively, based on the nude photographs he took of his stepdaughter. Count III charged Overton with the knowing receipt of child pornography in violation of 18 U.S.C. § 2252A(a)(2), and Count IV charged him with the unlawful possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). The indictment also included a forfeiture count pursuant to 18 U.S.C. § 2253(a).

Overton waived his right to trial by jury and proceeded with a bench trial before Judge Molloy. At trial, the prosecution introduced numerous images presumed to be child pornography, which were received without objection, as well as various pictures of JNW, including Exhibits 6-1 through 6-5, five photographs taken during the March 2005 incident when JNW was a minor. The prosecution called a total of nine witnesses, including JNW, Nelson, and Agent Damuth, and presented Overton's written statement from the February 2007 interview with FBI agents.

At the close of the Government's case-in-chief, Overton moved for acquittal on the ground that the prosecution failed to prove the elements in its case beyond a reasonable doubt, arguing that the pictures of JNW did not depict "sexually explicit conduct," as required for conviction. The district court denied the motion. Overton then took the stand in his own defense, denied matters previously admitted to FBI

agents, and provided rationalizations for much of his conduct involving his stepdaughter.

At the conclusion of the two-day trial, the district court found Overton guilty on all counts and entered Findings of Fact & Conclusions of Law. Specifically, the court found that Overton created and thereafter possessed three sexually explicit photographs of his minor stepdaughter and also downloaded numerous images of child pornography from the Internet onto his home and work computers. Overton filed a motion for post-conviction dismissal, requesting dismissal of either Count I or II and either Count III or IV, alleging violations of the Fifth Amendment's Double Jeopardy Clause. The district court denied the motion in a detailed order.

The Probation Office prepared a lengthy Presentence Investigation Report ("PSR") for the sentencing phase, which described in detail the circumstances of the instant offenses and Overton's background. Several sources confirmed Overton's expressed belief that it was acceptable for adults to teach underage family members about sex. The PSR also relayed a past incident described by Overton's previous wife where he allegedly propositioned one of his biological daughters to engage in sexual activity. The child was 12 years old at the time. Based on the calculated offense level and criminal history, the Probation Office recommended a Sentencing Guidelines range for imprisonment of between 188 and 235 months. This range was within the permissible statutory range for the subject offenses.[4]

The parties were provided with ample opportunity to review and respond to the PSR and the Probation Office's recommendation. The Government did not file objections. Over-

---

[4]The statutory ranges were 15 to 30 years on Counts I and II, the sexual exploitation of a minor offenses; 5 to 20 years on Count III, the receipt of child pornography conviction; and not more than 10 years on Count IV, the possession conviction.

ton's only objection related to the double jeopardy argument raised in his previously denied post-conviction motion to dismiss. He requested a sentence at the low end of the Guidelines range.

On February 29, 2008, the district court held a sentencing hearing. After considering the arguments and evidence presented by both sides, Judge Molloy sentenced Overton to 235 months on Counts I, II, and III, and to 120 months on Count IV, to run concurrently, and to be followed by a lifetime of supervised release. Overton timely appeals his conviction and sentence.

## II

Overton first claims that the Government's proof was insufficient to sustain a conviction on the sexual exploitation counts charged in Counts I and II. Claims of sufficiency of the evidence are reviewed *de novo*. *United States v. Shipsey*, 363 F.3d 962, 971 n.8 (9th Cir. 2004). Findings of fact, however, are reviewed for clear error. *United States v. Doe*, 136 F.3d 631, 636 (9th Cir. 1998). Evidence is sufficient to support a conviction unless, viewing the evidence in the light most favorable to sustaining the verdict, no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "The same test applies to both jury and bench trials." *Doe*, 136 F.3d at 636; *Friends of Yosemite Valley v. Norton*, 348 F.3d 789, 793 (9th Cir. 2003).

Overton was found guilty of violating two provisions of 18 U.S.C. § 2251, based on his conduct involving his stepdaughter. Section 2251(a), the basis of Count I, states as follows:[5]

---

[5]The October 2008 amendments expanded the scope of § 2251(a) and (b) by inserting additional language to prohibit the transmission of live images of sexually explicit conduct. We quote to the version of § 2251 in effect at the time of Overton's conviction. 18 U.S.C. § 2251 (2006).

(a) Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor assist any other person to engage in, or who transports any minor in interstate or foreign commerce, or in any Territory or Possession of the United States, with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct, shall be punished as provided under subsection (e), if such person knows or has reason to know that such visual depiction will be transported in interstate or foreign commerce or mailed, if that visual depiction was produced using materials that have been mailed, shipped, or transported in interstate or foreign commerce by any means, including by computer, or if such visual depiction has actually been transported in interstate or foreign commerce or mailed.

Section 2251(b), the basis of Count II, by comparison, states in full:

(b) Any parent, legal guardian, or person having custody or control of a minor who knowingly permits such minor to engage in, or to assist any other person to engage in, sexually explicit conduct for the purpose of producing any visual depiction of such conduct shall be punished as provided under subsection (e) of this section, if such parent, legal guardian, or person knows or has reason to know that such visual depiction will be transported in interstate or foreign commerce or mailed, if that visual depiction was produced using materials that have been mailed, shipped, or transported in interstate or foreign commerce by any means, including by computer, or if such visual depiction has actually been transported in interstate or foreign commerce or mailed.

Criminal penalties for violating the sexual exploitation statute are stiff. Offenders face, at minimum, fines and imprisonment of "not less than 15 years nor more than 30 years." 18 U.S.C. § 2251(e).

[1] Congress defined "sexually explicit conduct" to include, *inter alia*, the "lascivious exhibition of the genitals or pubic area of any person." 18 U.S.C. § 2256(2)(A)(v).[6] In our circuit the trier of fact will often look to six factors to determine whether a visual depiction of a minor constitutes a "lascivious exhibition of the genitals or pubic area" in the particular case:

1) whether the focal point of the visual depiction is on the child's genitalia or pubic area;

2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;

3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;

4) whether the child is fully or partially clothed, or nude;

5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity;

6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

---

[6]As relevant to the counts here, the term "sexually explicit conduct" is defined by 18 U.S.C. § 2256(2)(A) to mean "actual or simulated—(i) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (ii) bestiality; (iii) masturbation; (iv) sadistic or masochistic abuse; or (v) lascivious exhibition of the genitals or pubic area of any person."

*United States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986), *aff'd sub nom. United States v. Wiegand*, 812 F.2d 1239 (9th Cir. 1987). The *Dost* factors, as they are commonly referred, are neither exclusive nor conclusive, but operate as merely "a starting point" for determining whether a particular image is "so presented by the photographer as to arouse or satisfy the sexual cravings of a voyeur." *United States v. Hill*, 459 F.3d 966, 972 (9th Cir. 2006) (quoting *Wiegand*, 812 F.2d at 1244). "The factors are merely general principles as guides for our analysis." *Id.* (internal quotations omitted). "[T]he jury should not be made to rely on the *Dost* factors with precision to reach a mathematical result, or to weigh or count them, or to rely on them exclusively." *United States v. Rivera*, 546 F.3d 245, 253 (2d Cir. 2008) (finding no error in jury instructions based on the *Dost* factors and affirming conviction for possession of child pornography). *Dost* itself encourages consideration of any other factors that may be relevant in a particular case. 636 F. Supp. at 832.

Overton's only quarrel regarding his sufficiency of the evidence claim is his continued insistence that the nude photographs he took of JNW do not depict "sexually explicit conduct" within the meaning of § 2251. Here, the district judge, sitting without a jury and as the trier of fact, reviewed the five photographs of JNW taken in March 2005, when she was 17 years old. Although all were of JNW nude, Judge Molloy concluded that only three, Exhibits 6-2, 6-4, and 6-5, portrayed "sexually explicit conduct" because they depicted the lascivious exhibition of JNW's genitals or pubic area. The district court supported its factual findings with detailed descriptions of each photograph with reference to the Dost factors:

> Exhibit 6-2 depicts a lascivious exhibition of the genitals or pubic area of the victim. Although the child's genitals are not the focal point of the image and are partially covered, the child's genitals are visible. The child's breasts are also visible. The image

is sexually suggestive because the child is sitting on a bed—a place generally associated with sexual activity. The image also suggests sexual coyness. The child is posed with her head down, hair hanging in her face, and her arms covering her breasts. The hair in the child's face and arms partially covering her breasts suggests sexual coyness or reluctance. The victim testified that Overton directed her regarding where to place her hands. Thus, the image's depiction of sexual coyness was intended and the image was likely designed to elicit a sexual response in the viewer.

Exhibit 6-4 depicts a lascivious exhibition of the genitals or pubic area of the victim. The child is standing by a fireplace nude. She is facing the camera with her breasts fully exposed. The child's hands are covering part of her genitals. The child's breasts and genitals are the focal point of the image. Although only the lower portion of the child's face is visible, her hair is covering her face, suggesting sexual coyness. The image is likely to arouse or satisfy the sexual cravings of a voyeur.

Exhibit 6-5 depicts a lascivious exhibition of the genitals or pubic area of the victim. The image is a close up, frontal view of the child's genitals and breasts, both of which are fully exposed. The child's genitals are in the center of the picture and are thus the focal point of the image. The image is sexually suggestive because the child is sitting with her legs spread apart—a pose generally associated with sexual activity. In light of the prominence of the child's genitals and her pose, the image was very likely intended to elicit a sexual response in the viewer.

We must initially determine what standard of review applies to Overton's first argument on appeal. Overton argues

that *de novo* review of the photographs applies. We disagree. Overton's sufficiency of the evidence claim amounts to nothing more than his personal disagreement with the trier of fact's findings with respect to the images of JNW. He merely asks that we make our own independent determination whether or not the photographs at issue depict "sexually explicit conduct."

**[2]** "The question of whether the pictures fall within the statutory definition is a question of fact as to which we must uphold the district court's findings unless clearly erroneous." *Wiegand*, 812 F.2d at 1244. We have held, for example, that "lascivious" is a "commonsensical term," *id.* at 1243, and that whether an image is lascivious is a determination that a lay person can and should make "based on the overall content of the visual depiction." *Hill*, 459 F.3d at 972*; see also United States v. Arvin*, 900 F.2d 1385, 1390 (9th Cir. 1990) ("[W]hether a given photo is lascivious is a question of fact. . . . Because the jury was fully capable of making its own determination on the issue of 'lasciviousness,' the district court did not abuse its discretion in excluding the expert testimony."). Here, as he articulates his sufficiency of the evidence claim, Overton merely disputes Judge Molloy's findings that three digital pictures of JNW depict "sexually explicit conduct." Therefore, we apply the significantly deferential, clearly erroneous standard to Overton's challenge to the district court's findings of fact. *See United States v. Nemuras*, 740 F.2d 286, 286-87 (4th Cir. 1984) (concluding that the district court did not clearly err in finding that photographs of a 4-year-old girl depicted "sexually explicit conduct" and affirming defendant's conviction under § 2251). We must accept the district court's findings unless upon review we are left with the "definite and firm conviction that a mistake has been committed." *Easley v. Cromartie*, 532 U.S. 234, 242 (2001); *accord United States v. Elliott*, 322 F.3d 710, 715 (9th Cir. 2003) ("Where there are two permissi-

ble views of the evidence, the factfinder's choice between them cannot be clearly erroneous.").[7]

[3] Having reviewed the evidence presented to the district court for ourselves, we find no error, clear or otherwise, in the conclusion that Exhibits 6-2, 6-4, and 6-5 depict "sexually explicit conduct." Here, the *Dost* factors, while not definitional, firmly substantiate the finding that these three images depict the lascivious exhibition of the genitals or pubic area. The district court's analysis of these factors with respect to the images at issue, *supra*, is thorough and sound. We therefore find it unnecessary to replicate this discussion and merely adopt it as part of our own.

[4] We think the sixth *Dost* factor, "whether the visual depiction is intended or designed to elicit a sexual response in the viewer," *Dost*, 636 F. Supp. at 832, is of particular utility where, as is the case here, the criminal conduct at issue relates to a defendant's role in the *production* of the exploitative images under review, and not merely the *possession* of illicit materials. "Although it is tempting to judge the *actual* effect of the photographs on the viewer, we must focus instead on the *intended* effect on the viewer." *United States v. Villard*, 885 F.2d 117, 125 (3d Cir. 1989). As we have held, "lasciviousness is not a characteristic of the child photographed but of the exhibition which the photographer sets up for an audience that consists of himself or likeminded pedophiles." *Wiegand*, 812 F.2d at 1244; *accord United States v. Wolf*, 890 F.2d 241, 245 (10th Cir. 1989) ("[T]he Ninth [C]ircuit clearly stated that to violate 18 U.S.C. § 2251 the photographer need not portray the victimized child as a temptress."). This is

---

[7]We have examined the same evidence admitted by the district court and we see no reason to overturn the factual findings under the rule set down in *Jackson v. Virginia* for appellate review of sufficiency challenges. We note that our determination regarding the applicable standard of review, while important to the soundness of our appellate function, is not outcome-determinative in this particular case. Application of the broader *de novo* review would lead us to the same result.

because "[c]hildren do not characteristically have countenances inviting sexual activity," *United States v. Frabizio*, 459 F.3d 80, 89 (1st Cir. 2006), but "an innocent child can be coaxed to assume poses or expressions that bespeak sexual availability when viewed by certain adults." *Rivera*, 546 F.3d at 251. After all, "[t]he crime is the offense against the child —the harm 'to the physiological, emotional, and mental health' of the child; the 'psychological harm; the invasion of the child's 'vulnerability.' " *Wiegand*, 812 F.2d at 1245 (quoting *New York v. Ferber*, 458 U.S. 747, 758, 775-76 (1982)) (citations omitted).

**[5]** Here, the circumstances surrounding the creation of the homemade images only strengthen our conviction that the exhibition in Exhibits 6-2, 6-4, and 6-5 is "lascivious." Overton shepherded JNW throughout the family's home, photographing her in assorted poses with varied backdrops. JNW testified at trial that Overton "told me what to do," "he made me pose," and he would "tell me to move my hands in a certain way" so that "he could get a full shot." Overton not only instigated the photographic sessions, he also staged the shoot and directed the action to fulfill his desired vision. He was "responsible for the *mise-en-scène*." *Rivera*, 546 F.3d at 250 (considering testimony that "Rivera arranged the poses and took the photographs").[8] The prosecution also offered additional nude photographs of JNW recovered from Overton's computers. Although it did not rely on these images in con-

---

[8]On appeal, Overton insists that the district court wrongly "supposed that JNW was in poses suggested by Mr. Overton." He denies doing so and contends that "he just took the photos of her naked." This claim, even if true, is not compelling. In any event, Overton's contention belies the evidence presented at trial. The district court found JNW to be a credible witness, while it found Overton not credible. The district court's ruling on the credibility of a witness is entitled to substantial deference. *United States v. Jordan*, 291 F.3d 1091, 1100 (9th Cir. 2002). A reasonable juror could easily have reached the same conclusion as the district court did based on this evidence presented at trial. We see no reason to set aside that credibility determination here.

victing Overton on the sexual exploitation counts because there was a failure of proof as to JNW's age at the time, the district court properly considered these additional illicit photographs as evidence dispelling any notion that the March 2005 images were created for innocent artistic or educational reasons. While distorted in his taste, Overton was clear in his intentions. The homemade images of JNW were intended and designed to elicit a sexual response in the voyeur—namely, in Overton himself or likeminded individuals. The evidence presented at trial provides profound insight into the exhibition seen within the four corners of the photographs and supports the conclusion that the three images of JNW at issue are a sufficient predicate for the sexual exploitation offenses.

[6] Just as we found in *Wiegand*: "Plainly the pictures were an exhibition. The exhibition was of the genitals. It was a lascivious exhibition because the photographer arrayed it to suit his particular lust. Each of the pictures featured the child photographed as a sexual object." 812 F.2d at 1244. Because we are without a "definite and firm conviction" that a mistake was committed, we conclude that the district court, sitting as the trier of fact, did not clearly err in determining that Exhibits 6-2, 6-4, and 6-5 each depict a lascivious exhibition of a minor's genitals or pubic area and thus "sexually explicit conduct," as defined by the statute. *Easley*, 532 U.S. at 242. Overton does not dispute the sufficiency of the evidence with respect to any other element of the offenses. Therefore, viewing the evidence in the light most favorable to sustaining the conviction, we hold that a rational fact-finder could find the essential elements of the federal offenses, violations of § 2251(a) and (b), beyond a reasonable doubt. *Jackson*, 443 U.S. at 319.

## III

We next turn to Overton's constitutional claims. Overton contends that his conviction on the various counts is unlawfully multiplicitous and violates the Fifth Amendment's Dou-

ble Jeopardy Clause. We review the legality of Overton's conviction and sentence *de novo*, *United States v. Kimbrew*, 406 F.3d 1149, 1151 (9th Cir. 2005), as we would review the district court's denial of his motion to dismiss based on double jeopardy grounds. *United States v. Hickey*, 367 F.3d 888, 891 n.3 (9th Cir. 2004); *United States v. Jose*, 425 F.3d 1237, 1240 (9th Cir. 2005).

**[7]** "[T]he prohibition against double jeopardy is a cornerstone of our system of constitutional criminal procedure." *United States v. Davenport*, 519 F.3d 940, 947-48 (9th Cir. 2008). The Fifth Amendment's Double Jeopardy Clause provides: "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. This fundamental right has been interpreted to protect persons "against successive prosecutions for the same offense after acquittal or conviction and," as relevant here, "against multiple criminal punishments for the same offense." *Monge v. California*, 524 U.S. 721, 727-28 (1998); *accord United States v. Elliot*, 463 F.3d 858, 864 (9th Cir. 2006). Generally stated, "[w]hen a defendant has violated two different criminal statutes, the double jeopardy prohibition is implicated when both statutes prohibit the same offense or when one offense is a lesser included offense of the other." *Davenport*, 519 F.3d at 943 (citing *Rutledge v. United States*, 517 U.S. 292, 297 (1996)). Congress, of course, has the power to authorize multiple punishments arising out of a single act or transaction. The constitutional guarantee against double jeopardy merely assures that the court does not "exceed its legislative authorization by imposing multiple punishments for the same offense." *Id.*

As a preliminary matter, we acknowledge that conviction on multiple counts carries collateral consequences that, if unlawfully multiplicitous, we cannot ignore simply because imposed sentences might run concurrently. "For example, the presence of two convictions on the record may delay the defendant's eligibility for parole or result in an increased sen-

tence under a recidivist statute for a future offense . . . and certainly carries the societal stigma accompanying any criminal conviction." *Rutledge*, 517 U.S. at 302 (quoting *Ball v. United States*, 470 U.S. 856, 864-65 (1985)). "Where we conclude that a defendant has suffered a double jeopardy violation because he was erroneously convicted for the same offense under two separate counts, . . . 'the only remedy consistent with the congressional intent is for the [d]istrict [c]ourt, where the sentencing responsibility resides, to exercise its discretion to vacate one of the underlying convictions.' " *United States v. Schales*, 546 F.3d 965, 980 (9th Cir. 2008) (quoting *Ball*, 470 U.S. at 864).

## A

Overton claims that his conviction on both Counts I and II, for the sexual exploitation of a minor, is unconstitutional. It is undisputed that both counts were predicated on the March 2005 episode when Overton took nude photographs of his minor stepdaughter. Thus, the double jeopardy claim here turns on whether Overton was convicted twice for the same offense.

As acknowledged by the parties, whether § 2251(a) and (b) punish the same offense or separate offenses is a matter of first impression in our circuit.[9] Therefore, we must explore the space. We employ the well-established *Blockburger* test to evaluate Overton's double jeopardy claim and conclude that Congress intended the statutory provisions to constitute separate offenses. Accordingly, we find Overton's conviction on separate sexual exploitation counts, Counts I and II, constitutionally permissible.

---

[9]*But see United States v. Threadgill*, 297 Fed. App'x 688, 690 (9th Cir. 2008) (memorandum disposition) (affirming dual convictions under § 2251(a) and (b) because Threadgill "has not demonstrated that [these provisions] do not each require proof of a fact that the other does not" under the *Blockburger* test).

**1**

**[8]** The Supreme Court set forth a generally applicable test in *Blockburger v. United States*, 284 U.S. 299 (1932), to determine whether two statutory provisions prohibit the same offense. The *Blockburger* test, as it has become known, states: "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Id.* at 304. "If two different criminal statutory provisions indeed punish the same offense or one is a lesser included offense of the other, then conviction under both is presumed to violate congressional intent." *Davenport*, 519 F.3d at 943. Our analysis focuses on the statutory elements of the offenses, not the actual evidence presented at trial. *Kimbrew*, 406 F.3d at 1151.

The *Blockburger* test is merely "a 'rule of statutory construction,' and because it serves as a means of discerning congressional purpose the rule should not be controlling where . . . there is a clear indication of contrary legislative intent." *Albernaz v. United States*, 450 U.S. 333, 340 (1981)*; accord Davenport*, 519 F.3d at 946; *see also Missouri v. Hunter*, 459 U.S. 359, 367-69 (1983) (holding that the *Blockburger* analysis, which concluded that two statutes punished the defendant for the same conduct, gave way to clear legislative intent to permit multiple punishments). "Absent a clearly expressed legislative intention to the contrary," however, the statutory language "must ordinarily be regarded as conclusive." *Albernaz*, 450 U.S. at 336 (internal quotations omitted).

**[9]** Applying the *Blockburger* test to this case, it is readily apparent that § 2251(a) and (b) constitute separate offenses from which we infer Congress's intent to authorize multiple punishments for a single act or transaction. As the district court ruled and as the Government maintains on appeal, each statutory provision requires proof of an additional fact which

the other does not. To obtain a conviction under § 2251(a), the prosecution must prove that the defendant "employ[ed], use[d], persuade[d], induce[d], entice[d], or coerce[d] any minor to engage in," "had a minor assist any other person to engage in," or "transporte[d] any minor in interstate or foreign commerce . . . with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct." 18 U.S.C. § 2251(a). In contrast, to obtain a conviction under § 2251(b), the prosecution must prove that the defendant is a "parent, legal guardian, or person having custody or control of a minor who knowingly permits such minor to engage in, or to assist any other person to engage in, sexually explicit conduct for the purpose of producing any visual depiction of such conduct." 18 U.S.C. § 2251(b).

**[10]** The evidence necessary to establish a violation of § 2251(a) will not necessarily suffice for a conviction under § 2251(b), and vice versa. *Compare* Model Crim. Jury Instr. 9th Cir. 8.150 (2003) (18 U.S.C. § 2251(a)) *with* Model Crim. Jury Instr. 9th Cir. 8.151 (18 U.S.C. § 2251(b)). "[I]t matters not that there is 'substantial overlap' in the evidence used to prove the two offenses, so long as they involve different statutory elements." *Kimbrew*, 406 F.3d at 1152. Sexual exploitation of a minor under § 2251(a) requires proof of active or coercive conduct by a defendant upon a minor, whereas § 2251(b) relates only to knowledge (by a person with custodial control). *See* H.R. Conf. Rep. No. 95-811, at 6 (1977), *as reprinted in* 1978 U.S.C.C.A.N. 69, 70 (noting that the criminal act of § 2251(b) "is to be an expression of knowledge and control."). On the flip side, sexual exploitation under § 2251(b) must be predicated on proof of the defendant's supervisory relationship with the minor. *See* S. Rep. No. 95-438, at 16 (1977), *as reprinted in* 1978 U.S.C.C.A.N. 40, 54 ("Liability under 2251(b) would only attach to those persons who are charged by law with control over the minor, or, have been delegated and voluntarily accepted such control by the person charged by law with such responsibility."). Because

each statutory provision requires proof of an additional fact the other does not, violations of § 2251(a) and (b) of Title 18 are not the same offense under *Blockburger*, and we presume that Congress intended to permit multiple punishments for a single act or transaction.

Overton does not argue that a *Blockburger* analysis produces a contrary finding regarding congressional intent. Rather, citing our decisions in *United States v. Keen*, 104 F.3d 1111 (9th Cir. 1996), and *United States v. Zalapa*, 509 F.3d 1060 (9th Cir. 2007), he contends that the *Blockburger* test does not apply because Counts I and II both arise out of violations of the same statute, 18 U.S.C. § 2251, and a single act or transaction.[10]

Overton's argument is unsound. The *Blockburger* test plainly applies to our review of the offenses in question. Because § 2251(a) and (b) are, without question, separate statutory provisions, *Keen* and *Zalapa* are inapposite. Those cases, like others upon which Overton mistakenly relies, involve multiple convictions based on a single statutory provision. The defendant in *Keen* was convicted on two counts of violating 18 U.S.C. § 922(g)(1), for simultaneously possessing a firearm and its ammunition. 104 F.3d at 1118. We there rejected the Government's argument that the *Blockburger* test permitted double punishment, finding the test inapplicable because it only applies when "the same act or transaction constitutes a violation of *two distinct statutory provisions*." *Id.* at 1118 n.12 (quoting *Blockburger*, 284 U.S. at 304) (emphasis

[10]In cases where *Blockburger* does not apply, courts look elsewhere for congressional intent to determine the allowable unit of prosecution, *see Keen*, 104 F.3d at 1118, and apply the rule of lenity to resolve any ambiguities in favor of the criminal defendant. The Supreme Court describes the rule as follows: "This policy of lenity means that the Court will not interpret a federal criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what Congress intended." *Albernaz*, 450 U.S. at 342 (quoting *Ladner v. United States*, 358 U.S. 169, 178 (1958)).

in original); *see also Brown v. United States*, 623 F.2d 54, 56-59 (9th Cir. 1980) (reviewing whether Congress clearly intended to impose cumulative punishments for a single document that twice violated 18 U.S.C. § 922(a)(6)). Overton's reliance on *Zalapa*, a double jeopardy case that, like *Keen*, involved multiple convictions based on a single statutory provision, is similarly unavailing.[11] 509 F.3d at 1062 (reviewing conviction on two counts of violating 26 U.S.C. § 5861(d), arising out of the possession of a single unregistered firearm).

The applicability of the *Blockburger* test is well-established and courts, including ours, universally apply it in situations like the instant one—where a defendant was convicted under separate statutory provisions. *See, e.g.*, *Davenport*, 519 F.3d at 943-46 (applying the *Blockburger* test to the defendant's conviction under separate provisions of 18 U.S.C. § 2252A); *Kimbrew*, 406 F.3d at 1151-52 (applying *Blockburger* test to separate criminal conspiracy counts). In sum, *Blockburger* applies here. It confirms that § 2251(a) and (b) do not punish the same offense but rather separate offenses, and indicates that Congress intended to authorize multiple punishments for a single act or transaction.

## 2

**[11]** Nothing in the legislative history of 18 U.S.C. § 2251 conclusively discloses "an intent contrary to the presumption which should be accorded to these [statutory provisions] after application of the *Blockburger* test." *Albernaz*, 450 U.S. at 340. Heavily relying on the Supreme Court's decision in *Bell v. United States*, 349 U.S. 81 (1955), Overton argues that

---

[11]We recognize that, while he cites *Keen* extensively, Overton's argument is based on language from a footnote in *Zalapa*. *See Zalapa*, 509 F.3d at 1062 n.1. While at times we used the term "statute" interchangeably with "statutory provision," we dismiss any suggestion that such case-specific language carries authoritative value to this or any other case. We readily recognize and adhere to the long-standing *Blockburger* test, as dictated by the Supreme Court.

because the legislative history is ambiguous on the question of multiple punishment, we should invoke the rule of lenity so as to disallow the imposition of multiple punishment. He is wrong. This turns the analysis on its head and improperly ignores the implications of the *Blockburger* analysis of the statutory language. Where there is no statutory ambiguity at the outset, "the rule of lenity simply has no application." *Albernaz*, 450 U.S. at 343.

*Bell*, like *Keen* and *Zalapa*, discussed *supra*, is a case where separate statutory provisions were not at issue. *Bell*, 349 U.S. at 82 (reviewing the defendant's conviction on two counts of violating the Mann Act, arising out of a single transaction). The Court did not apply the *Blockburger* test and looked directly to the legislative history. Finding no clear indication regarding Congress's intent to authorize multiple punishment, the Court applied the rule of lenity, resolving the ambiguity against the imposition of a harsher punishment. *Id.* at 83-84. Because *Blockburger* applies here and establishes that Overton was not convicted and sentenced twice for violations of the same offense, *Bell* has little application to this case, if any.

On this point, we need only look to the Supreme Court's decision in *Albernaz* to untangle Overton's flawed logic. The statutory offenses at issue there—i.e., conspiracy to import marijuana, 21 U.S.C. § 963, and conspiracy to distribute marijuana, 21 U.S.C. § 846—"clearly satisf[ied] the rule announced in *Blockburger* and [the defendants did] not seriously contend otherwise." 450 U.S. at 338. Nevertheless, the defendants, noting the congressional silence on the topic, *id.* at 340-41, argued that "because Congress has not spoken with the clarity required . . . to find an 'unambiguous intent to impose multiple punishment,' we should invoke the rule of lenity and hold that the statutory ambiguity on this issue prevents the imposition of multiple punishment." *Id.* at 336. The Court rejected this notion as "read[ing] much into nothing," and noted that "if anything is to be assumed from the congres-

sional silence on this point, it is that Congress was aware of the *Blockburger* rule and legislated with it in mind." *Id.* at 341-42. The Court went on to explain that "the touchstone of the rule of lenity is statutory ambiguity. . . . Where Congress has manifested its intention, we may not manufacture ambiguity in order to defeat that intent. Lenity thus serves only as an aid for resolving ambiguity; it is not to be used to beget one." *Id.* at 342 (internal citation and quotations omitted).

In a way, the *Blockburger* test determines who must come forward with the clear legislative intent.[12] Because the analysis with regard to § 2251(a) and (b) indicates that multiple punishment is permissible, that burden falls upon Overton to present a "clearly expressed legislative intention to the contrary." *Albernaz*, 450 U.S. at 336. He has failed to present a showing of congressional intent contradicting the statutory language. Instead, Overton, having bypassed the *Blockburger* analysis altogether, contends that "[r]eview of the statutory scheme reveals no clarity concerning dual penalties," and that "[t]he legislative history . . . is silent on the cumulative punishment issue." Overton reckons that this purported observation benefits his case. It definitively does not. On the contrary, congressional silence under these circumstances is detrimental to and conclusively undermines his double jeopardy claim.

**[12]** Our independent review of the legislative history has similarly failed to unearth anything conclusive in Overton's favor. Rather, in enacting the legislation, Congress contemplated § 2251(a) and (b) as unique and separate crimes. *See, e.g.*, S. Rep. No. 95-438, at 15-16, 20, *as reprinted in* 1978 U.S.C.C.A.N. 40, 53-54, 57-58 (separately discussing conduct that would constitute each federal crime); *Id.* at 61 ("Adults

---

[12]Even if we were to conclude that the *Blockburger* test did not apply, we would still need to determine whether Congress intended to authorize multiple punishments for a single act or transaction. In such a case, however, the Government would shoulder the burden of presenting clear legislative intent to overcome the rule of lenity.

who permit children to participate in these activities play an essential role in the production process somewhat akin to the supplier of an essential material."). The legislative history strengthens our conclusion under *Blockburger* that Congress intended § 2251(a) and (b) to constitute separate offenses for which multiple punishment is permissible, especially in egregious situations like the instant case. *See id.* at 46 (recognizing that in "the worst cases, the parents themselves lead the children into this depravity.").[13]

**[13]** We hold that § 2251(a) and (b) are separate offenses and multiple punishments based on the same act or transaction do not violate the Double Jeopardy Clause of the Fifth Amendment. Overton's convictions on Counts I and II are not constitutionally barred, and the district court properly denied his post-conviction motion to dismiss on that ground.

**B**

Overton also contends that his conviction on Count III, receipt of child pornography in violation of 18 U.S.C. § 2252A(a)(2), and Count IV, possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B), infringe upon his constitutional right against double jeopardy. It has been established that "the offense of possessing child pornography is a lesser included offense of the receipt of child pornography." *Davenport*, 519 F.3d at 947 (holding that separate convictions under § 2252A(a)(2) and § 2252A(a)(5)(B) based on

---

[13]Overton's argument that § 2251(a) and (b) are not "directed to separate evils" is also not compelling. To say that both offenses target "the exploitation of children" is to define the undesired "evil" far too broadly. Under this view, a vast array of statutory offenses, including, for example, child prostitution, another issue addressed by the same legislation, would also be included. *See* S. Rep. No. 95-438, at 16-17, *as reprinted in* 1978 U.S.C.C.A.N. 40, 54-55. Rather, the legislative history references the separate evils of targeting minors for use in the production of materials that depict sexually explicit conduct and of knowingly permitting the use of minors in such depravity by persons with legal control over the minor.

the same conduct violated the Double Jeopardy Clause); *see also United States v. Giberson*, 527 F.3d 882, 891 (9th Cir. 2008) (applying *Davenport*). Therefore, while the Government can indict and prosecute a defendant for both receipt and possession of child pornography, entering judgment of conviction for both is multiplicitous and constitutionally impermissible when based on the same conduct. *Davenport*, 519 F.3d at 944.[14]

**[14]** Here, whether Overton's conviction for both receipt and possession of child pornography offends the Fifth Amendment's protection against double jeopardy depends on whether the "conduct underlying both offenses is the same." *Id.* at 942; *accord United States v. Kuchinski*, 469 F.3d 853, 859 (9th Cir. 2006) ("If . . . the [receipt and possession of child pornography] counts were based *on the same acts*, entering judgment on both of the offenses would be improper." (emphasis added)). Stated in reciprocal terms, where separate conduct supports each offense, the Fifth Amendment's Double Jeopardy Clause is not implicated. In the instant case, there is no double jeopardy violation and the district court properly denied his motion to dismiss with respect to these counts because Overton was not twice punished for the same

---

[14]The term "child pornography" is defined by 18 U.S.C. § 2256(8), to mean:

> [A]ny visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where—

> (A) the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct;

> (B) such visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaging in sexually explicit conduct; or

> (C) such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct.

conduct. For this reason, Overton's case is distinguishable from our recent decisions where we have found double jeopardy violations in different contexts.[15]

*Schales*, for example, involved a similar double jeopardy challenge to a conviction for both possession and receipt of contraband images. 546 F.3d at 969. Walter Schales was apprehended after surreptitiously placing a camera underneath the skirt of a 14-year-old girl at a Wal-Mart store and taking a photograph. *Id.* at 968. A search of Schales's residence uncovered thousands of images of child pornography, including downloaded material, still and video images of minors that Schales had taken himself, and sexually explicit images that Schales manipulated with photo-editing software on his computer. *Id.* at 969. A jury convicted Schales for receiving materials involving the sexual exploitation of minors in violation of 18 U.S.C. § 2252(a)(2) and for possessing such materials in violation of 18 U.S.C. § 2252(a)(4)(B).

Schales appealed his conviction, claiming, among other things, a double jeopardy violation. After combing the indictment, jury instructions, and verdict form, we were unable to confidently conclude whether separate conduct formed the bases for the receipt and the lesser included possession offenses. *Id.* at 979-80 ("On this record, we cannot conclude that Schales was convicted of separate conduct."). Indeed, it was particularly noteworthy that the prosecution had argued to the jury that conviction on both counts could be based "solely on one image." *Id.* at 980. We held that Schales's double jeopardy rights were violated and remanded the case to the district court to vacate either the receipt or the possession conviction. *Id.* at 977, 980-81; *accord United States v. Brobst*,

---

[15]We note that Judge Molloy's order denying Overton's post-conviction motion to dismiss preceded the issuance of our opinions in *Davenport*, *Schales*, and other recent cases. Therefore, neither the district court nor the parties had the guidance of our current precedent when addressing the double jeopardy issue.

558 F.3d 982, 1000 (9th Cir. 2009) (remanding with instructions that the district court vacate one of Brobst's convictions for either receipt or possession of child pornography, allowing for it to be reinstated without prejudice if his other conviction should be overturned on direct or collateral review).

Our record, in contrast, is sufficiently developed and we are able to definitively conclude that Overton's receipt and possession convictions arose from separate misdeeds. On appeal, Overton concedes that his conduct in relation to JNW is distinct from his conduct relating to the Internet child pornography. He argues, however, that Judge Molloy, sitting in place of the jury, did not rely on the homemade images with respect to Counts III and IV, but instead premised both his receipt and possession convictions solely on "the same images"—i.e., the child pornography he downloaded from the Internet to his home and work computers. Not so. The record, in our view, plainly reveals otherwise.

In *Schales*, we reviewed a jury verdict and therefore undertook the formidable task of probing the record to determine the factual predicate for the defendant's conviction. Our task here, by contrast, is considerably simpler because we review a bench trial conviction. We are furnished with direct access to the written findings and conclusions of the trier of fact and therefore need not resort to scrutinizing the indictment or jury forms in an effort to surmise what formed the basis of each conviction.[16] Here, the trier of fact has spoken with a clear voice.

---

[16]We have, however, reviewed the indictment to determine whether it forecloses reliance on certain images with respect to the possession offense. It does not. Count IV charges as follows:

> That on or about 2004 and continuing until June 5, 2006, at Manhattan and Bozeman, in the State and District of Montana, and elsewhere, the defendant, WALTER OVERTON, knowingly possessed numerous computer files containing an image or images or movies of child pornography that had been mailed, shipped, or

Overton made the same double jeopardy argument he presents to us in his post-conviction motion to dismiss. The district court denied Overton's motion and, in doing so, left no doubt that the receipt and possession convictions were based on separate conduct, stating "the Court did not rely on the same act to establish both Overton's receipt and possession of child pornography." Whereas "Overton's conviction for receipt of child pornography [was] based on the fact that Overton searched for child pornography on the Internet using search words including 'teen,' and then viewed and downloaded some of the images returned as a result of his searches," his conviction for possession was based not only on the downloaded images but also "on his possession of the three sexually explicit photographs he took of his minor step daughter . . . ." In other words, Judge Molloy—the trier of fact who considered the evidence and returned the guilty verdict—confirmed that he had based the possession conviction in part on Overton's illicit photographs of JNW. Only rarely can we expect to find such a clear and decisive answer in an appellate record.

We find further confirmation that the possession conviction was based on separate conduct. Judge Molloy made detailed factual findings regarding Overton's retention of the digital photographs, going so far as to specify the file folder names

---

       transported in interstate or foreign commerce by any means, including by a computer located at 8166 Frontage Road, Manhattan, and computers at the MSU-Bozeman Campus, Bozeman, Montana and other locations or that was produced using materials that had been mailed, shipped, or transported in interstate or foreign commerce by any means, including by computer, in violation of 18 U.S.C. § 2252A(a)(5)(B).

Quite clearly, the indictment leaves open the possibility that conviction might be premised on the pictures he produced, and not merely the downloaded images. Therefore, nothing precluded Judge Molloy from finding Overton guilty of unlawful possession because he retained the photographs of his stepdaughter.

within which he stored the homemade images. The findings also track Overton's conduct in deceiving his wife into believing he destroyed the images of JNW while, in reality, he shuttled them between his work and home computers. Further, in his written conclusions regarding the possession (but not the receipt) conviction Judge Molloy included credibility determinations, finding JNW "a credible witness," Overton "not believable or credible," and Nelson "biased" in her husband's favor. He also found that the items used to *produce* the pictures of JNW had been transported in interstate or foreign commerce—a finding likewise included in connection with the possession (but not the receipt) conviction. The only logical conclusion to draw from the district court's express findings is that the possession offense encompassed Overton's conduct with respect to the illicit images of his stepdaughter. Overton makes no effort to persuade us otherwise, except to simply turn a blind eye to an unsupportive record.

We also reject Overton's argument that both convictions cannot be premised, as a matter of principle, on "the same images." The federal criminal offenses at issue punish conduct, and nothing precludes downloaded images from supporting conviction on multiple counts. *See United States v. Planck*, 493 F.3d 501, 505 (5th Cir. 2007) ("For the possession statute in issue, . . . the *actus reus* is the possession of child pornography; the Government need only prove the defendant possessed the contraband at a single place and time to establish a single act of possession and, therefore, a single crime.). We spoke clearly in *Schales*, where we agreed that the receipt of material involving the sexual exploitation of minors on Schales's computer hard drive and the subsequent transfer to different physical media—e.g., printing the images or transferring them to portable devices—constituted separate conduct. 546 F.3d at 979. Following our sister circuit, we concluded that "where a defendant has stored sexually explicit images in separate mediums, the government may constitutionally charge that defendant with separate counts for each type of material or media possessed." *Id.* (citing *Planck*, 493

F.3d at 504 ("[W]here a defendant has images stored in separate materials (as defined in 18 U.S.C. § 2252A), . . . the Government may charge multiple counts, each for the type of material or media possessed, as long as the prohibited images were obtained through the result of different transactions.")). After all, as the Fifth Circuit reasoned in *Planck*, "[a] contrary result would allow amassing a warehouse of child pornographic materials . . . with only a single count of possession as a potential punishment." 493 F.3d at 504 (holding that because Planck possessed child pornography in three separate places, i.e., a laptop, a desktop computer, and diskettes, he committed three different crimes and his conviction on three possession counts was not multiplicitous). We explained that there would have been no double jeopardy violation if Schales was convicted of "receipt . . . for images that he downloaded from the [I]nternet and [of] possession . . . for images that he transferred to and stored on compact discs." *Schales*, 546 F.3d at 980. The record, however, failed to demonstrate that the jury so found.

Applying this principle to the instant case, Overton's dual convictions could also be premised solely on his collection of downloaded child pornography. The district court made express findings that on many separate occasions Overton used his home and work computers to download images of minors engaged in sexually explicit conduct, which he thereafter knowingly possessed in different physical media, including at least one computer hard drive and one computer disk. Under our precedent, the transfer and storage of previously-downloaded Internet images—to a memory card or diskette, for example—describes conduct separate from the act of downloading pornography and may thus provide sufficient independent basis for a possession conviction. Overton's double jeopardy argument fails on this ground as well.

**[15]** As the record reveals, the district court did not unlawfully convict Overton of both receipt and the lesser included possession offenses based on the same conduct. Overton cre-

ated sexually explicit photographs of his stepdaughter JNW, which he thereafter stored in various locations. This conduct is separate and distinct from perusing Internet porn sites and downloading images to his home and work computers. The instant case is therefore distinguishable from prior cases where we have found constitutional infirmities. Overton's conviction for both receipt and possession of child pornography steers clear of the Fifth Amendment's prohibition against double jeopardy.

## IV

Finally, Overton challenges the sentencing determination. He does not dispute the district court's Sentencing Guidelines computations, and he concedes that the 235-month sentence imposed was within, albeit at the upper end of, the Guidelines range. He nevertheless contends that the district court failed to adequately consider the factors of 18 U.S.C. § 3553(a) and imposed a "one-size fits all" sentence that was too harsh under the circumstances. There is a procedural as well as a substantive element to this argument. "On appeal, we first consider whether the district court committed significant procedural error, then we consider the substantive reasonableness of the sentence." *United States v. Carty*, 520 F.3d 984, 993 (9th Cir. 2008) (en banc), *cert. denied sub nom. Zavala v. United States*, 128 S. Ct. 2491 (2008). We therefore address each in turn.

## A

Overton alludes to procedural error by accusing the district court of failing to address the § 3553(a) factors and adequately explain the sentence imposed. We disagree. Judge Molloy discussed at length the basis for the within-Guidelines sentence, properly articulated the role of both the Guidelines and the § 3553(a) factors, and referenced the various considerations that weighed into the sentencing determination. Among other things, Judge Molloy contemplated on the

record "a need for the sentence imposed to reflect the serious-ness of the offense and to promote a respect for the law and to provide just punishment for the offense," "the need to afford adequate deterrence to criminal conduct," the lasting harm imposed on the victim, the ongoing threat Overton posed to children, his need for treatment in a sex offender pro-gram, as well as the goal of avoiding sentence disparities for similar offenses.

The district court diligently satisfied its obligations at sen-tencing. *See United States v. Diaz-Argueta*, 564 F.3d 1047, 1051-52 (9th Cir. 2009) (holding that the district court's cal-culation of the applicable Guidelines range and statement that it had "carefully considered the Presentence Report and the comments of counsel, and the memorandum filed on behalf of the defendant" were sufficient to conclude that it had properly accounted for the § 3553(a) factors in fashioning a sentence). The law does not require a district court to "tick off each of the § 3553(a) factors to show that it has considered them. We assume that district judges know the law and understand their obligation to consider all of the § 3553(a) factors not just the Guidelines." *Carty*, 520 F.3d at 992. "Nor need the district court articulate in a vacuum how each § 3553(a) factor influ-ences its determination of an appropriate sentence." *Id.*

As the Supreme Court has recognized, "[w]hen a judge decides simply to apply the Guidelines to a particular case, doing so will not necessarily require lengthy explanation." *Rita v. United States*, 551 U.S. 338, 127 S. Ct. 2456, 2468 (2007); *accord United States v. Carter*, 560 F.3d 1107, 1117 (9th Cir. 2009). "[I]n the ordinary case, the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.' " *Carty*, 520 F.3d at 996 (quoting *Kimbrough v. United States*, 128 S. Ct. 558, 574 (2007) (internal citations omitted)). While it is error for the sentencing court to weigh the Guidelines range more heavily than other § 3553(a) fac-tors or to presume that the Guidelines range is reasonable, *id.*

at 991, there is no indication that the district court did so here. In fact, to the contrary, the district court recognized the Guidelines as a "starting point" and as merely "advisory" before proceeding through a reasoned analysis of the factors considered in fashioning an appropriate sentence.

We further note that Overton's argument for a low-end sentence, which was primarily based on his alleged good character, was straightforward and uncomplicated. Thus, a thorough explanation by the court was not required. *See Rita*, 127 S. Ct. at 2469. Even so, the district court here plainly took account of Overton's mitigation case. It also placed the character evidence in perspective, noting that the "witnesses who testified about [Overton's] character at work had no knowledge of his private proclivities or interests, including his interest in teaching his teenage stepdaughter about sex," and that the harm imposed "is not a thing that can be overlooked by the suggestion that the public persona of Walter Merle Overton is a man of good character, of trustworthiness and grace."

**[16]** In sum, the record before us more than sufficiently demonstrates that the district court heard and considered Overton's arguments, contemplated the § 3553(a) factors, and reached an informed conclusion regarding sentencing. The sentencing judge gave no indication that he felt bound by the Guidelines range or presumed it reasonable. He certainly "set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Rita*, 127 S. Ct. at 2468; *see also* 18 U.S.C. § 3553(c). There was no procedural error.

**B**

Second, Overton claims the 235-month sentence was substantively unreasonable. We consider the substantive reasonableness of a sentence under the deferential abuse of discretion standard. *Gall v. United States*, 128 S. Ct. 586, 597

(2007). "We may not reverse just because we think a different sentence is appropriate." *Carty*, 520 F.3d at 993. After all, "[t]he sentencing judge is in a superior position to find facts and judge their import under § 3553(a) in the individual case. The judge sees and hears the evidence, makes credibility determinations, has full knowledge of the facts and gains insights not conveyed by the record." *United States v. Cherer*, 513 F.3d 1150, 1160 (9th Cir. 2008) (quoting *Gall*, 128 S. Ct. at 597); *accord Carter*, 560 F.3d at 1120. While our circuit has declined to embrace an appellate presumption of reasonableness, "when the judge's discretionary decision accords with the Commission's view of the appropriate application of § 3553(a) in the mine run of cases, it is probable that the sentence is reasonable." *Carty*, 520 F.3d at 994 (quoting *Rita*, 127 S. Ct. at 2465). Stated in other terms, "a correctly calculated Guidelines sentence will normally not be found unreasonable on appeal." *Id.* at 988.

Here, after considering the totality of the circumstances, the district court imposed a 235-month sentence, at the high end of the Guidelines range. As discussed *supra*, it is readily apparent from the record that the district court considered the § 3553(a) factors in determining an appropriate sentence for Overton. On appeal, Overton simply reargues the leniency argument he made before the district court. Frankly, given the severity of Overton's misdeeds and his unwillingness or inability to sufficiently recognize the gravity of his actions, we find Overton's mitigating evidence substantially underwhelming.[17] We, like the district court, find significant "the nature and circumstances of the offense and the history and circumstances of Walter Merle Overton," including, but not limited to, Overton's undeterred recidivism, the seriousness and depravity of his actions with his stepdaughter, his admitted "addiction" to pornographic material and conduct damaging

---

[17]Overton spoke on his own behalf at the sentencing hearing and described his illicit conduct with JNW as a battle of competing priorities.

to children, and the evidence of what can fairly be described as "grooming" proclivities.

**[17]** In short, Overton offers nothing that persuades us that the Guidelines sentence imposed by Judge Molloy was substantively unreasonable. The statutory maximum was 30 years. 18 U.S.C. § 2251(e). Here, we can easily conclude that a high-end Guidelines sentence of 235 months was reasonable. The district court did not abuse its discretion at sentencing.

## V

For the foregoing reasons, we affirm Overton's conviction and sentence on all grounds. First, we find no error in the district court's finding that Exhibits 6-2, 6-4, and 6-5 portray the lascivious exhibition of the genitals or pubic area and therefore depict "sexually explicit conduct." Viewing the evidence in the light most favorable to support the conviction, a rational trier of fact could have found the essential elements of the sexual exploitation counts beyond a reasonable doubt. Second, because there is no clearly expressed legislative intention to the contrary, the *Blockburger* test conclusively demonstrates that violations of § 2251(a) and (b) constitute separate offenses for which Congress authorizes multiple punishments. Accordingly, Overton's conviction on separate sexual exploitation counts is constitutionally permissible. Third, the record on appeal demonstrates that Overton's conviction for receipt and the lesser included possession of child pornography was based on separate conduct and therefore does not violate his Fifth Amendment double jeopardy rights. Finally, the district court did not commit procedural error or abuse its discretion in imposing the within-Guidelines sentence.

**AFFIRMED**.