**UNITED STATES of America, Appellee,**

v.

**Robert David SIROIS, Defendant–Appellant.**

**No. 1276, Docket 95–1547.**

United States Court of Appeals,
Second Circuit.

Argued April 1, 1996.

Decided June 11, 1996.

Richard A. Reeve, Asst. Federal Public Defender, New Haven, CT, for Defendant–Appellant.

Leonard C. Boyle, Asst. United States Attorney, Christopher F. Droney, United States Attorney, District of Connecticut, New Haven, CT, for Appellee.

Before: OAKES, WINTER, and CALABRESI, Circuit Judges.

CALABRESI, Circuit Judge:

Robert Sirois photographed sexual activity involving teenage boys who had been transported from Connecticut to New York by their grade-school teacher. A jury found that his conduct violated 18 U.S.C. § 2251(a), the federal statute prohibiting child pornography. Sirois was also convicted of engaging in illegal sexual activity with one of the boys, in violation of 18 U.S.C. § 2422. He was, in addition, found guilty of conspiring with the schoolteacher to commit the foregoing crimes. Sirois argues that the jury charge was flawed in several respects, and he challenges the sufficiency of the evidence. Although Sirois raises some novel contentions, none of them has merit and we therefore affirm his conviction in all respects.

## I. BACKGROUND

Viewing the evidence, as we must, in the light most favorable to the jury's finding of guilt, *United States v. Martinez*, 54 F.3d 1040, 1042 (2d Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 545, 133 L.Ed.2d 448 (1995),

the evidence adduced at trial can be described as follows.

Gary Booth, a school teacher in East Hartford, Connecticut, regularly seduced young male students. Both Christopher Coupe and Thomas Miller were students in the East Hartford school system and came to know Booth while he taught at the Mayberry Elementary School. When Coupe was in ninth grade, Booth invited him to his rural home to "chop wood" and work around the house. During that visit, while Coupe was staying in the basement of his home, Booth plied him with alcohol and showed him pornographic movies. After gaining Coupe's confidence, Booth began to engage him sexually.

In 1989, Booth invited Coupe to join him on a weekend visit to his friend and former student, Robert Sirois. Sirois, then twenty-eight years old, lived in Hyannis, Massachusetts. After Sirois's wife and children retired to their rooms, Booth, Sirois, and Coupe went to a computer room in the back of the house. There, Booth supplied Coupe with beer to the point where he was "feeling pretty good." Once the boy was tipsy, both Booth and Sirois had sexual intercourse with him.

During the visit to Sirois's home, Booth and Sirois discussed a camping trip that they intended to take in Lake Placid, New York, that summer. When Sirois was not present, Booth invited Coupe to attend, telling him that they would camp, swim, and go boating. After several more discussions with Booth, Coupe decided to go on the trip.

At the same time that Booth was seducing Coupe, he also began his exploitation of another student, Thomas Miller. Booth initiated this relationship while Miller was in sixth grade. In the summer of 1989, when Miller was fifteen years old, Booth persuaded Miller to join the camping trip to Lake Placid, promising waterskiing, camping, and "a good time." Miller had not yet met Sirois.

In late July 1989, Coupe and Miller traveled from Connecticut to Lake Placid with Booth. They set up camp on an island that they reached on Booth's motorboat. Over the next few days, other adults and teenagers joined them, including Sirois, who brought along another boy, Scott Barnes. Sirois had with him a camera and a video recorder. Booth also took a camera to the campsite.

Booth, Coupe, Miller, Barnes, and Sirois shared a lean-to on the island. A few nights into the trip, the five engaged in group sex. At some point, Sirois set up his video camera and began filming the various sexual acts of the participants. Coupe recalled that during the videotaping Sirois was "telling people what to do" as he recorded the sex. Miller testified that after the videotaping concluded, Sirois engaged in sexual intercourse with him.

In July 1992, after a number of Booth's past victims came forward, law enforcement agents obtained a warrant to search Booth's home. The agents discovered a set of photographs taken during the 1989 Lake Placid trip, most of which depicted nonsexual activities. Four of the photographs, however, showed Booth, Coupe, and Barnes engaged in sexual acts. Both Coupe and Miller testified that although they could not specifically recall the photographs being taken, Sirois was the only person in a position to have done so. No videotape was found. Booth eventually pleaded guilty to several federal charges of sexual exploitation of minors under 18 U.S.C. §§ 2251(a) and 2422. *United States v. Booth*, 996 F.2d 1395 (2d Cir.1993) (*per curiam*) (affirming a ten-year prison sentence).

The Government filed a four-count indictment against Sirois. Counts One and Two centered on the four photographs found in Booth's home. Count One charged that Sirois had aided and abetted Booth in the sexual exploitation of Coupe. Specifically, it alleged that Booth had transported Coupe across state lines intending that Coupe engage in sexual activity so that visual depictions might be created. It further asserted that those depictions crossed state lines, in violation of 18 U.S.C. § 2251(a),[1] and that

1. Section 2251(a) provides:
   Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor assist any other person to engage in, or who transports any minor in interstate or foreign commerce, or in any Territory or

Sirois had aided and abetted this crime by taking the photographs. Count Two charged that Sirois violated a separate provision of § 2251(a) by "employing, using, and persuading" Coupe and Miller to engage in sexually explicit conduct for the purpose of producing visual depictions of that conduct. Count Three charged that Sirois, aided and abetted by Booth, had violated 18 U.S.C. § 2422 [2] by engaging in illegal sexual activity with a minor (Miller) after the boy had been transported across state lines for that purpose. Count Four alleged that Sirois and Booth had conspired to commit all three crimes.

A jury convicted Sirois on all four counts, and Judge Burns sentenced him to seventy months in prison. He appeals from his judgment of conviction.

## II. DISCUSSION

■ Sirois challenges several parts of the jury charge as well as the sufficiency of the evidence on all counts. We review the jury charge de novo, *United States v. Carr*, 880 F.2d 1550, 1555 (2d Cir.1989), but draw all inferences in the government's favor when reviewing the sufficiency of the evidence, *Martinez*, 54 F.3d at 1042.

### A. The Jury Charge

#### 1. Completion of the Offense

Sirois argues that § 2251(a) is violated as soon as a minor is transported across state lines and that subsequent actions (such as taking pictures) therefore cannot give rise to aiding and abetting liability. He compares the statute to 18 U.S.C. § 2421 (a latter-day version of the Mann Act), which prohibits interstate transportation of any person in order to engage that person in prostitution. A Mann Act offense is completed once a prostitute crosses state lines. *See Wilson v. United States*, 232 U.S. 563, 571, 34 S.Ct.

347, 350, 58 L.Ed. 728 (1914) (finding a violation of the Mann Act even though the defendants, Chicago pimps, refused to accept women who had been transported from Wisconsin, because "the offense is complete when 'any such woman or girl shall be transported in interstate or foreign commerce....'"). Given the similarity between the two statutes, Sirois argues that the same should be true of § 2251(a). *Compare* § 2251(a) (punishing "[a]ny person who ... transports any minor in interstate or foreign commerce ... with the intent that such minor engage in" sexual activity that will be photographed) *with* § 2421 (punishing "[w]hoever knowingly transports any individual in interstate or foreign commerce ... with intent that such individual engage in ... any [illegal] sexual activity"). He further argues that his alleged role did not directly involve the transportation, but only the subsequent photographing. If the offense is completed upon transportation, then, Sirois contends, he cannot be held liable for helping Booth to violate § 2251(a).

■ As the government points out, however, § 2251(a) contains a further element that § 2421 does not: Either the child pornography itself must cross state lines, or the defendant must know or have reason to know that the pornography will cross state lines. 18 U.S.C. § 2251(a) (penalizing pornographer "if such person knows or has reason to know that [child pornography] will be transported in interstate or foreign commerce or mailed, or if such visual depiction has actually been transported in interstate or foreign commerce or mailed"). Unlike the Mann Act, a violation of § 2251(a) that is based on the *actual* transportation of child pornography across state lines *cannot* be complete until the pornography is so transported. The jury was entitled to find Sirois guilty of aiding

---

Possession of the United States, with the intent that such minor engage in any sexually explicit conduct for the purpose of producing any visual depiction of such conduct, shall be punished as provided under subsection (d), if such person knows or has reason to know that such visual depiction will be transported in interstate or foreign commerce or mailed, or if such visual depiction has actually been transported in interstate or foreign commerce or mailed.

2. Section 2422(a) provides:

Whoever knowingly persuades, induces, entices, or coerces any individual to travel in interstate or foreign commerce, or in any Territory or Possession of the United States, to engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, shall be fined under this title or imprisoned not more than five years, or both.

and abetting Booth's violation of § 2251(a) if it found that he helped to create the visual depictions of the illicit sexual conduct that were subsequently transported.

■ We do not hold, of course, that all violations of § 2251(a) remain inchoate until the pornography actually crosses state lines. To the contrary, the statute requires *either* that the pornography cross state lines *or* that the defendant know or have reason to know that pornography will do so. In the present case, where the indictment alleged that the photographs had actually been transported, the crime was ongoing until the photographs were carried back to Connecticut. We express no opinion as to whether the same would hold true if, in a different case, a violation of § 2251(a) were premised solely on a defendant's intent to transport photographs.

## 2. *"Sole Dominant Purpose"*

Judge Burns instructed the jury that, to prove a violation of § 2251(a), "[i]t is not necessary for the government to prove ... that illegal sexual activity, or visual depictions of that activity, was the sole or even the dominant purpose of the minors being transported. It is enough if the evidence shows that illegal sexual activity for the production of visual depictions of that activity was one of the dominant purposes of the trip." She expressly refused to give Sirois's requested instruction that sexual activity had to be the *sole* dominant purpose for the trip.

Sirois relies primarily on *Mortensen v. United States,* 322 U.S. 369, 64 S.Ct. 1037, 88 L.Ed. 1331 (1944), which overturned the Mann Act conviction of a couple who allowed two prostitutes from their Nebraska bordello to accompany them on a vacation in Utah. The Court held that, in order to prove a violation of the Mann Act, "it is essential that the interstate transportation have for its object or be the means of effecting or facilitating the proscribed activities." *Id.* at 374, 64 S.Ct. at 1040. Because the women did not engage in any prostitution on the trip, the Court overturned the couple's convictions. Sirois draws our attention to a key line in the Supreme Court's opinion: "An intention that the women or girls shall engage in the con-

duct outlawed by [the Mann Act] must be found to exist before the conclusion of the interstate journey and must be *the dominant motive* of such interstate movement." *Id.* (emphasis added).

But the defense reads too much into *Mortensen.* In that case, the Court was careful to point out that the *only* purpose of the Utah trip was to enjoy a vacation. Because the defendants did not claim that they had several purposes in mind, the Court had no occasion to decide whether an illegal purpose had to be exclusive or even paramount.

■ In any event, we reject Sirois's contention that the proscribed activity must be the sole dominant purpose of the transportation. The criminal law applies to everyone, not just the single-minded. And a person who transports children across state lines both to engage in sexual intercourse with them and to photograph that activity is no less a child pornographer simply because he is also a pedophile.

■ Accordingly, we hold that a jury may find a violation of § 2251(a) so long as the evidence shows that illegal sexual activity for the production of visual depictions of that activity was one of the dominant motives for the interstate transportation of the minors, and not merely an incident of the transportation. *Accord United States v. Ellis,* 935 F.2d 385, 390 (1st Cir.), *cert. denied,* 502 U.S. 869, 112 S.Ct. 201, 116 L.Ed.2d 160 (1991); *United States v. Drury,* 582 F.2d 1181, 1185–86 (8th Cir.1978); *United States v. Snow,* 507 F.2d 22, 23–24 (7th Cir.1974); *Forrest v. United States,* 363 F.2d 348, 350–51 (5th Cir.1966), *cert. denied,* 386 U.S. 995, 87 S.Ct. 1315, 18 L.Ed.2d 343 (1967); *Dingess v. United States,* 315 F.2d 238, 240 (4th Cir.), *cert. dismissed,* 373 U.S. 947, 83 S.Ct. 1559, 10 L.Ed.2d 703 (1963); *Dunn v. United States,* 190 F.2d 496, 497 (10th Cir.1951).

## 3. *Commercial Motive*

Sirois next argues that Judge Burns should have charged the jury that: "The defendant must have committed these acts for the purpose of later commercial use of the photographs." While conceding that § 2251(a) "itself does not contain such a re-

quirement," he nevertheless urges us to add one, consistently with our observation in *United States v. Petrov*, 747 F.2d 824, 827 (2d Cir.1984), *cert. denied*, 471 U.S. 1025, 105 S.Ct. 2037, 85 L.Ed.2d 318 (1985), that "Congress believed this legislation was necessary to deal with the commercial exploitation of sexual activity involving children...."

█ When Congress originally enacted § 2251(a), it provided that a defendant could be convicted only if he produced child pornography "for pecuniary profit." The Protection of Children Against Sexual Exploitation Act of 1977, Pub.L. 95–225, § 2(a), 92 Stat. 8 (1978) (enacting 18 U.S.C. § 2253(3), later redesignated as 18 U.S.C. § 2255(3), which defined "producing" as "producing, directing, manufacturing, issuing, publishing, or advertising *for pecuniary profit*") (emphasis added). But it later deleted the phrase "for pecuniary profit" in the 1984 amendments to the Act. Child Protection Act of 1984, § 5(a)(5), Pub.L. 98–292, 98 Stat. 204. The reason for this deletion was set out explicitly in the House Report that accompanied the amendments:

> Since the harm to the child exists whether or not those who initiate or carry out the schemes are motivated by profit, the Subcommittee found a need to expand the coverage of the Act by deleting the commercial purpose requirement.

H.R.Rep. No. 536, 98th Cong., 2d Sess. 2–3 (1984), *reprinted in* 1984 U.S.C.C.A.N. 492, 493–94. By repealing this language, Congress has unambiguously indicated that a defendant does not need to have a commercial motive to be liable under § 2251(a). And it is surely not for us to reenact language that Congress has repealed. *Cf. United States v. Bevacqua*, 864 F.2d 19, 20 (3d Cir. 1988) (rejecting defendant's argument that court should read parallel child pornography statute, 18 U.S.C. § 2252(a)(2), as if repealed "commercial purpose" language were still in force).

To bolster his argument, in the face of such congressional action, Sirois suggests that the Supreme Court's decision in *United States v. Lopez*, ── U.S. ──, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), renders § 2251(a) constitutionally suspect unless we engraft a "commercial purpose" requirement onto the section. In *Lopez*, the Court held that Congress exceeded its power under the Commerce Clause when it banned simple possession of a gun within so many feet of a school, absent any nexus between the gun possession and interstate commerce. *Id.* at ── ── ──, 115 S.Ct. at 1630–31. Unlike the statute at issue in *Lopez*, however, § 2251(a) clearly requires an identifiable interstate nexus: either the child pornography must cross state lines or, alternatively, the defendant must know (or have reason to know) that such transportation is planned.

█ It is well-established that Congress can regulate activities that involve interstate or international transportation of goods and people, regardless of whether the transportation is motivated by a "commercial purpose." In *United States v. 12,200–Ft. Reels of Super 8MM Film*, 413 U.S. 123, 125, 93 S.Ct. 2665, 2667, 37 L.Ed.2d 500 (1973), the Supreme Court held that the Commerce Clause empowers Congress to prohibit the importation of obscene material from abroad, even if it is imported for personal use rather than commercial distribution. Similarly, in *Cleveland v. United States*, 329 U.S. 14, 18, 67 S.Ct. 13, 15, 91 L.Ed. 12 (1946), the Court upheld the Mann Act convictions of Mormon men who had arranged for women to travel to Utah to join them in polygamous marriages, on the grounds that the Mann Act, "while primarily aimed at the use of interstate commerce for the purposes of commercialized sex, is not restricted to that end." Consonant with these decisions, we conclude that § 2251(a) need not contain any requirement of "commercial purpose" to fall within the permissible scope of congressional regulation.

█ Since Congress removed the requirement of a commercial purpose, and since such a purpose is not constitutionally mandated, we hold that the interstate nexus of § 2251(a) does not require a commercial purpose. *Accord United States v. Bell*, 5 F.3d 64, 68 (4th Cir.1993); *United States v. Smith*, 795 F.2d 841, 845 (9th Cir.1986), *cert. denied*, 481 U.S. 1032, 107 S.Ct. 1964, 95 L.Ed.2d 535 (1987).

### 4. *Defining "Using"*

Judge Burns refused to define the terms "employing, using, or persuading"—which appear in § 2251(a)—for the jury, on the grounds that an ordinary person could readily understand what they mean.

Sirois claims that the government urged the jury to interpret the word "use" too broadly. In its summation, the prosecution analogized Coupe and Miller to a vase being photographed; each was "used" to create a visual depiction. Sirois, instead, wanted to define "use" more narrowly, to mean "take some acts which manipulate or take advantage of a minor." The defense argues that, at the very least, any "use" by Sirois must have occurred *prior* to the photographed sexual activity, since the other activities proscribed by § 2251(a)—enticing, inducing, persuading, coercing—must all happen before the sexual activity.

Sirois also argues that some clarificatory instruction was warranted, especially in view of the recent debate over the meaning of the word "use" in 18 U.S.C. § 924(c), which prohibits "use" of a firearm in certain circumstances. Sirois points to *Bailey v. United States*, —— U.S. ——, ——, 116 S.Ct. 501, 505, 133 L.Ed.2d 472 (1995), and the Supreme Court holding that under § 924(c), "use" of a firearm entails active employment, not merely possession, of a gun. *See also Smith v. United States*, 508 U.S. 223, 113 S.Ct. 2050, 124 L.Ed.2d 138 (1993) (ruling that bartering a gun for drugs constitutes "use" of a firearm under § 924(c)).

Although the word "use" may pose "interpretational difficulties" in certain contexts, *id.*, we do not believe that it creates problems here. As the Supreme Court pointed out in *Bailey*, the "ordinary or natural" meaning of the word "use" can be variously stated as "[t]o convert to one's service," "to employ," "to avail oneself of," and "to carry out a purpose or action by means of." —— U.S. at ——, 116 S.Ct. at 506 (quoting *Smith*, 508 U.S. at 229, 113 S.Ct. at 2054) (internal quotation marks omitted). There is undoubtedly an active component to the notion of "use." But that component is fully satisfied for the purposes of the child pornography statute if a child is photographed in order to create pornography.

Likewise, there is no reason to assume that the "use" of a minor must occur *before* the filming or photographing of illicit sexual activity. No temporal limitation is implicit in any of the meanings that the word "use" ordinarily has, nor is one indicated in the surrounding statute or case law. Although some of the other actions listed in § 2251(a), such as "enticing, inducing, and persuading" will most often occur before the depicted activity, that is not so of the word "use." And we find no indication in the statute that Congress meant to import a temporal limitation into the term in this context.

In short, we believe that the meaning of "use" in § 2251(a) is within the typical juror's everyday understanding of the word. Accordingly, the district judge did not err in declining to define it further. *Cf. United States v. Johnpoll*, 739 F.2d 702, 712 (2d Cir.) (holding that a district judge need not define the word "recently" because it is "neither outside common understanding nor so technical or ambiguous as to require specific definitions"), *cert. denied*, 469 U.S. 1075, 105 S.Ct. 571, 83 L.Ed.2d 511 (1984); *United States v. Crockett*, 506 F.2d 759, 762 (5th Cir.) (holding that a district court need not define the term "commercial gambling house" for the jury since it is "reasonably within the common understanding of a juror"), *cert. denied*, 423 U.S. 824, 96 S.Ct. 37, 46 L.Ed.2d 40 (1975).

### B. *Sufficiency of the Evidence*
#### 1. *Count One*

Sirois challenges the sufficiency of the evidence adduced to show (1) that Booth specifically intended to bring a minor to Lake Placid to be photographed while engaging in sexual activity, and (2) that Sirois had knowledge of Booth's intent. First, Sirois argues that no evidence supported the jury's implicit finding that Booth had the requisite intent under § 2251(a) that Coupe and Miller "engage in ... sexually explicit conduct for the purpose of producing any visual depiction of such conduct." (And if Booth did not violate § 2251(a) as a principal, then Sirois cannot

be held liable as an aider and abettor.) Second, Sirois claims that there was no adequate showing that he knew of Booth's plans.

■ There was overwhelming evidence that Booth intended to exploit Coupe and Miller sexually at Lake Placid, and there was ample evidence that Sirois had knowledge of Booth's intent. Booth invited Coupe to attend the camping trip right after having sex with him and Sirois in Cape Cod. Booth had a history of exploiting both Coupe and Miller by inviting them out to his home, plying them with alcohol, and then engaging them sexually. Inviting them to camp at an even more remote site, far from their families, fits in perfectly with this pattern of behavior. Finally, and most importantly, Booth (and Sirois) actually had sex with Coupe, Miller, and Barnes on the campout. The jury was entitled to conclude that Booth intended to do exactly what he did. They could also infer that Sirois knew that Booth would be bringing underage boys to the campout, since Booth had previously brought Coupe to have sex with him and Sirois in Cape Cod. Furthermore, it was reasonable to infer that, because Sirois brought Barnes to the campout, Sirois and Booth had a mutual understanding that each would provide an underage boy to have intercourse with the other— as in fact happened.

The closer question is whether Booth intended that the sexual activity be photographed and, even if he did, whether Sirois knew of that intent. As the defense points out, the police found no other pornographic photographs at Booth's house. There was no testimony that either Sirois or Booth had ever taken sexual photographs before the Lake Placid trip. Neither Coupe nor Miller testified that Booth had ever showed them photographs of sexual activity or had discussed photographing them.[3] In short, the defense argues that the photography might have been nothing more than a spur-of-the-moment idea.

■ The jurors, if they had chosen, could have accepted the defense's characterization of the photography at the campout. But they did not. And there was sufficient circumstantial evidence to support their decision to accept the government's interpretation of events. The camping trip had been jointly planned by Sirois and Booth; Booth was involved in group sex with the minors while Sirois took photographs; and those photographs were later found at Booth's house. Most importantly, Booth as well as Sirois brought a camera to the campout. It was certainly reasonable for the jury to infer that Sirois and Booth, who had jointly planned the event, had collaborated in their decision to bring photographic equipment. Moreover, the jury could reasonably conclude that both Booth and Sirois had brought their photographic equipment to do precisely what they did: to record sexual activity with underage boys. We conclude that there was enough evidence to support the jury verdict on count one.

### 2. Count Two

Sirois claims that there was inadequate evidence that he "employed, used, or persuaded" the minors to have sex for the purpose of photographing that conduct.

■ As we discussed earlier, a person "uses" a minor to produce child pornography if the minor serves as the subject of photography. Both Coupe and Miller testified that Sirois was the only one in a position to have taken the photographs found at Booth's house. Even if that were not enough, Coupe testified that during the group sex, Sirois directed the participants to move their sexual activity to different parts of the lean-to, so that he could more easily videotape them. The jury could have readily inferred that Sirois's direction of the activity helped him take the photographs just as much as it helped him take the videotape. There was ample evidence to support Sirois's conviction on count two.

---

**3.** There was evidence that Booth had shown pornographic movies to Coupe and Miller at his house, after getting them drunk—but this does not seem probative, since there was no indica-

tion that any of these were home-made films, or that Booth had ever shown the boys home-made pornographic photographs.

### 3. *Count Three*

Sirois also challenges the sufficiency of the evidence on count three, that he aided and abetted Booth in persuading Miller to travel in interstate commerce to engage in illegal sex with Sirois, in violation of 18 U.S.C. § 2422.

■ Sirois first challenges the consistency of the government's theory of the case. In the indictment and the jury charge, the government treated Sirois as a principal who was aided and abetted by Gary Booth. In the bill of particulars, however, it treated Sirois as the accessory. We believe that any shifting in the government's position was harmless here, since a jury may consider alternate theories of criminal liability. *United States v. Concepcion,* 983 F.2d 369, 392–93 (2d Cir.1992), *cert. denied sub nom. Frias v. United States,* 510 U.S. 856, 114 S.Ct. 163, 126 L.Ed.2d 124 (1993). Here, the government put forward both varieties of the aiding-and-abetting theory (Booth as principal and Sirois as accessory, and vice versa) at various stages of the case. And Sirois was on notice, from the inception of the case, that he could be held liable as either a principal or an accessory. *Id.* (finding no error in the prosecution's argument, first raised at summation, that the jury could convict the defendant as an aider and abettor, where the indictment had cited 18 U.S.C. § 2, which provides for aiding-and-abetting liability).

■ Second, Sirois questions the adequacy of the evidence that he knew of Booth's plans in this regard. We agree with the government that Booth's long-standing pattern bringing young boys to Sirois's house, together with the fact that Booth and Sirois jointly planned the Lake Placid campout, provided enough evidence for the jury to infer that Sirois knew that Booth would bring a young boy to the campout. The jury could also rationally conclude that Sirois intended, as at Cape Cod, to engage in sexual intercourse with the boy whom Booth would bring. That suffices to support his conviction on count three.

### 4. *Count 4*

Finally, Sirois challenges his conspiracy conviction on the grounds that each of his substantive convictions was flawed. For the reasons already stated, we uphold the jury verdicts on all three counts. Accordingly, we affirm the conspiracy conviction as well.

### III. CONCLUSION

We reject all of the defendant's challenges to the jury charge. First, a person can be convicted of aiding and abetting a violation of § 2251(a) by taking photographs that constitute child pornography, even though the depicted minors have already been transported across state lines. Second, to convict, a jury need only find that one of the dominant motives for the interstate transportation was that the minors engage in sexual activity that will be visually depicted. Third, there is no requirement that the defendant have a commercial motive to violate § 2251(a). Finally, a defendant can be found to have "used" a minor to produce child pornography if the minor serves as the subject of the illicit photographs taken by the defendant. We further find that the evidence before the jury was sufficient to support its verdicts on all four counts.

Affirmed.