RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 14a0305p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

No. 13-2735

*v.*

THOMAS L. WRIGHT,

*Defendant-Appellant.*

───────────────

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids
No. 1:12-cr-00130-1—Robert Holmes Bell, District Judge.

Decided and Filed:  December 23, 2014

Before:  DAUGHTREY, McKEAGUE, and WHITE, Circuit Judges.

───────────────

#### COUNSEL

**ON BRIEF:**  Dennis C. Kolenda, DICKINSON WRIGHT PLLC, Grand Rapids, Michigan, Charles E. Chamberlain, WILLEY & CHAMBERLAIN, Grand Rapids, Michigan, for Appellant. Daniel Y. Mekaru, UNITED STATES ATTORNEY'S OFFICE, Grand Rapids, Michigan, for Appellee.

───────────────

#### OPINION

───────────────

HELENE N. WHITE, Circuit Judge.  Following a bench trial, the district court found Wright guilty on five counts of sexual exploitation of a minor, 18 U.S.C. § 2251(a), (e), and one count each of transporting images of a minor engaged in sexually explicit conduct, 18 U.S.C. § 2252(a)(1) & (b)(1) (count 6), and possession of child pornography, 18 U.S.C. § 2252A (count 7).  Wright appeals his convictions on counts 1 through 6.  We AFFIRM.

**I.**

The sole witnesses were two agents of the Department of Homeland Security, Investigations unit (HSI). Special Agent Michael George testified that after receiving a lead from a Texas child-pornography investigation,[1] he and forensic examiner Special Agent Timothy Kruithoff interviewed Wright at his residence outside Bangor, Michigan, on March 24, 2011. Wright consented to the interview and explained that when J.S. was sixteen Wright had hired him to mow the lawn and perform other chores at Wright's home and at the equestrian center Wright owns and operates across the street from his home. Wright admitted that he began a sexual relationship with J.S., and photographed J.S. in the nude when J.S. was sixteen. This sexual relationship was ongoing when Agents George and Kruithoff interviewed Wright. Wright was sixty-two and J.S. was eighteen at the time of the interview.[2]

Wright consented to the search and seizure of equipment from his home office, including an Apple desktop computer, a laptop computer, three thumb drives, a Fuji camera, a digital video camera, external hard drives, and two camera storage devices. Wright explained that the nude images of him and J.S. were on his desktop and thumb drives, and the nude images of J.S. when he was sixteen were located on a thumb drive.

HSI forensic computer analyst Special Agent Blair Babcock testified at trial that he examined the seized equipment and that the only nude photographs found of J.S. were taken in Florida on March 4, 6, and 9, 2009. Wright was also nude in a number of those photographs. Email messages and credit-card statements introduced at trial confirmed that Wright and J.S. stayed at a Florida hotel from March 4 to 10, 2009. Wright stated to the Probation Officer who prepared the PSR that because the age of consent in Michigan is sixteen,[3] Wright did not believe that photographing J.S. in the nude was illegal. Twenty-one of these Florida photographs are the

---

[1]Wright sent nude images he took of J.S. at age sixteen to Timothy E. Whittington in Euless, Texas, via the internet. Whittington replied with nude photographs of himself and his ten-year-old son. After federal authorities interviewed Whittington and seized his computer in December 2010, they learned that an email address belonging to Wright had sent and received nude photographs of a minor. This investigation ensued.

[2]The parties stipulated to J.S.'s birthdate.

[3]The age of consent in Michigan is sixteen. *See* Mich. Comp. Laws §§ 750.520b, 750.520c, 750.520d. Florida's statutory rape law provides: "A person 24 years of age or older who engages in sexual activity with a person 16 or 17 years of age commits a felony of the second degree . . ." unless the minor is emancipated. Fla. Stat. Ann. § 794.05(1)-(2).

subject of counts 1 through 3 (sexual exploitation of minor) and count 6 (transportation of images).

Also, a video camera that Wright installed in his office at the equestrian center recorded J.S. masturbating in July and August 2009, when J.S. was seventeen.  Two such video recordings formed the bases of the fourth and fifth counts of sexual exploitation of a minor.

At the close of the prosecution's proofs, Wright moved for acquittal on counts 1 through 6 under Fed. R. Crim P. 29.**4**  The district court denied the motion and the defense rested without presenting a case.  The district court sentenced Wright to concurrent fifteen-year terms on each of counts 1 through 6, and a concurrent ten-year term on count 7.  PID 529.  Wright appeals his convictions on counts 1 through 6.

## II.  Insufficiency Claim (counts 1 through 5)

Wright first argues that there was insufficient evidence to convict him of sexual exploitation of a minor under 18 U.S.C. § 2251(a) because the Government failed to prove that he "used" J.S. for the purpose of "producing" a visual depiction of sexually explicit conduct. Wright maintains that the district court misapprehended the "use" element of § 2251(a), and that this court should adopt the Ninth Circuit's interpretation of "use."  Appellant Br. at 12.

We review de novo Wright's challenges to the sufficiency of the evidence, and "[t]o the extent that the question turns on statutory interpretation, rather than on the sufficiency of the evidence, we review the issue de novo."  *United States v. Choice*, 201 F.3d 837, 840 (6th Cir. 2000).  "A defendant challenging the sufficiency of the evidence bears a very heavy burden." *United States v. Prince*, 214 F.3d 740, 746 (6th Cir. 2000) (citation omitted).  The question is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  We will reverse a conviction "only if, viewing the record as a whole, the judgment is not supported by substantial and competent evidence." *United States v. Blakeney*, 942 F.2d 1001, 1010 (6th Cir. 1991).

---

**4**Wright does not appeal his conviction of possessing child pornography (count 7).

Sexual exploitation of a minor is addressed in § 2251(a), which provides in pertinent part:

(a) Any person who employs, *uses*, persuades, induces, entices, or coerces any minor to engage in . . . any sexually explicit conduct for the purpose of *producing* any visual depiction of such conduct, shall be punished as provided under subsection (e), if such person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed, if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce . . . or if such visual depiction has actually been transported . . . in or affecting interstate or foreign commerce.

(Emphasis added.) "Minor" is defined as any person under the age of eighteen. 18 U.S.C. § 2256(1). As pertinent here, "sexually explicit conduct":

Means actual or simulated –
. . . .
(iii) masturbation;
. . . .
(v) lascivious exhibition of the genitals or pubic area of any person . . . .

18 U.S.C. § 2256(2)(A). "Producing" means "producing, directing, manufacturing, issuing, publishing or advertising." 18 U.S.C. § 2256(3).

## A. "Use" Element of § 2251(a)

Questions of statutory interpretation are reviewed under a three-step framework:

[F]irst, a natural reading of the full text; second, the common-law meaning of the statutory terms; and finally, consideration of the statutory and legislative history for guidance. The natural reading of the full text requires that we examine the statute for its plain meaning, including the language and design of the statute as a whole. If the statutory language is not clear, we may examine the relevant legislative history.

*Elgharib v. Napolitano*, 600 F.3d 597, 601 (6th Cir. 2010) (citations omitted). Where, as here, a statutory term is undefined, "we give it its ordinary meaning." *United States v. Santos*, 553 U.S. 507, 511 (2008). "'As in all cases of statutory construction, our task is to interpret the words of [the statute] in light of the purposes Congress sought to serve.'" *Dickerson v. New Banner Inst.,*

*Inc.*, 460 U.S. 103, 118 (1983) (quoting *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 608 (1979)).

No published decision of this court has interpreted the term "use" in § 2251(a).[5] The district court agreed with the Second, Fourth, and Eighth Circuits, that the "use" element is satisfied if a minor is photographed in order to create pornography. *United States v. Wright*, No. 1:12-CR-130, 2013 WL 164096, at *4–5 (W.D. Mich. Jan. 15, 2013). We agree as well.

**1.**

Wright contends that only the Ninth Circuit has properly interpreted the "use" element of § 2251, as requiring "proof of active or coercive conduct by a defendant upon a minor," *United States v. Overton*, 573 F.3d 679, 692 (9th Cir. 2009), and declaring that § 2251 "simply makes illegal the *inducement* of children into sexual conduct for the purpose of creating visual depictions of that conduct," *United States v. Smith*, 795 F.2d 841, 845 (9th Cir. 1986) (emphasis added). Wright argues that because J.S. initiated the nude photography sessions, § 2251 does not apply.

Wright's reliance on *Overton* is misplaced. The principal issue in *Overton* was whether double jeopardy barred convictions under both § 2251(a) and (b). *Overton*, 573 F.3d at 691–96. *Overton* did not address the question what constitutes "active or coercive conduct." The other circuits that have addressed the parameters of the "use" element acknowledge that there is "an active component to the notion of 'use.'" The district court in the instant case required active "use" as well:

> According to Defendant, [§ 2251(a)] requires that the defendant did something to cause the minor to engage in sexually explicit conduct and that the defendant did so with the specific intent to produce a visual depiction of that conduct. Defendant contends that there is no evidence about the circumstances under which the Florida pictures were taken—the purpose for taking the photos, who came up with the idea, who decided on the poses, who took which photographs, what camera was used, and whether features such as remote or time-delayed mechanisms were used. Defendant notes that the government failed to introduce

---

[5]Sixth Circuit Pattern Jury Instruction 16.01, which addresses the elements of § 2251(a), suggests that proof of conduct beyond the act of photographing or videorecording a minor is not required: "The basic conduct covered by this instruction is producing a visual image of a minor engaging in sexually explicit conduct." Sixth Cir. Pattern J.I. 16.01, committee commentary.

other nude photos taken on the Florida trip that were of a playful or jovial nature, suggesting a lack of coercion.

. . . .

"There is undoubtedly an active component to the notion of 'use.'" *United States v. Sirois*, 87 F.3d 34, 41 (2d Cir. 1996). However, the Second Circuit held in *Sirois* that the "use" component is "fully satisfied for the purposes of the child pornography statute if a child is photographed in order to create pornography." *Id.*

*Wright*, 2013 WL 164096, at *4–5.

Nor does the Ninth Circuit's decision in *Smith* support Wright, as it too does not address what conduct constitutes "use." Rather, *Smith* addressed whether § 2251(a) and § 2252 require the Government to prove that the defendant intended to distribute the images, and concluded they do not. 795 F.2d at 845–46 ("Neither section requires that the defendant's ultimate goal be distribution of the visual depiction.").

### B. Four Circuits Agree that the "Use" Element of § 2251 is Satisfied if a Minor is Photographed in Order to Create Pornography

The Second Circuit held that the "use" element of § 2251 is "fully satisfied . . . if a child is photographed in order to create pornography," *United States v. Sirois*, 87 F.3d 34, 41 (2d Cir. 1996), upholding the district court's refusal to define the terms "employing, using, or persuading" in § 2251(a) as requiring a defendant to act to manipulate or take advantage of a minor:

Sirois claims that the government urged the jury to interpret the word "use" too broadly. In its summation, the prosecution analogized Coupe and Miller to a vase being photographed; each was "used" to create a visual depiction. Sirois, instead, wanted to define "use" more narrowly, to mean "take some acts which manipulate or take advantage of a minor." The defense argues that, at the very least, any "use" by Sirois must have occurred prior to the photographed sexual activity, since the other activities proscribed by § 2251(a)—enticing, inducing, persuading, coercing—must all happen before the sexual activity.

Sirois also argues that some clarificatory instruction was warranted, especially in view of the recent debate over the meaning of the word "use" in 18 U.S.C. § 924(c), which prohibits "use" of a firearm in certain circumstances. Sirois points to *Bailey v. United States*, 516 U.S. 137, —, 116 S. Ct. 501, 505 [] (1995), and the Supreme Court holding that under § 924(c), "use" of a firearm entails active employment, not merely possession, of a gun. *See also  Smith v.*

*United States*, 508 U.S. 223 [] (1993) (ruling that bartering a gun for drugs constitutes "use" of a firearm under § 924(c)).

Although the word "use" may pose "interpretational difficulties" in certain contexts, *id.*, we do not believe that it creates problems here. As the Supreme Court pointed out in *Bailey*, the "ordinary or natural" meaning of the word "use" can be variously stated as "[t]o convert to one's service," "to employ," "to avail oneself of," and "to carry out a purpose or action by means of." 516 U.S. at —, 116 S. Ct. at 506 (quoting *Smith*, 508 U.S. at 229 []) (internal quotation marks omitted). There is undoubtedly an active component to the notion of "use." But that component is fully satisfied for the purposes of the child pornography statute if a child is photographed in order to create pornography.
. . . .

Although some of the other actions listed in § 2251(a), such as "enticing, inducing, and persuading" will most often occur before the depicted activity, that is not so of the word "use." . . . .

In short, we believe that the meaning of "use" in § 2251(a) is within the typical juror's everyday understanding of the word.

*Sirois*, 87 F.3d at 41.[6]

The Eighth Circuit followed *Sirois* in *United States v. Fadl*, 498 F.3d 862, 866 (8th Cir. 2007) (observing, "we agree . . . that the 'use' component 'is fully satisfied for the purposes of the child pornography statute if a child is photographed in order to create pornography.'" (quoting *Sirois*, 87 F.3d at 41)); *see also United States v. Vanhorn*, 740 F.3d 1166, 1168 (8th Cir. 2014) (same) (quoting *Sirois*, 87 F.3d at 41); *United States v. McCloud*, 590 F.3d 560, 566 (8th Cir. 2009) ("A defendant 'uses' a minor for purposes of § 2251(a) if he photographs the minor engaging in sexually explicit conduct to create a visual depiction of such conduct."); *accord United States v. Engle*, 676 F.3d 405, 419 n.9 (4th Cir. 2012) (quoting *McCloud*, 590 F.3d at 566)).

Most recently, the First Circuit in a case of first impression followed the Second, Fourth, and Eighth Circuits' interpretation of the term "use" in *Ortiz-Graulau v. United States*, 756 F.3d

---

[6]*Sirois* addressed other arguments Wright advances here, including that the term "use" in § 2251(a) should be interpreted as the Supreme Court interpreted "use" for purposes of 18 U.S.C. § 924(c)(1) in *Bailey v. United States*, 516 U.S. 137, 142–43 (1995) (holding that § 924(c)(1) "requires evidence sufficient to show an active employment of the firearm by the defendant, a use that makes the firearm an operative factor in relation to the predicate offense."). Appellant Br. at 15. *Sirois* acknowledged another argument Wright advances—that the verbs in § 2251(a) other than "use"—"persuade, induce, entice, and coerce"—are terms of causation and imply action. 87 F.3d at 41. *See* Appellant Br. at 16-17.

12, 18–19 (1st Cir. 2014) (holding that "the statutory definition of 'use' is met when a defendant makes a minor the subject of a visual depiction by intentionally photographing the minor engaging in sexually explicit conduct") (citing *Engle*, 676 F.3d at 418 n.9; *McCloud*, 590 F.3d at 566; *Sirois*, 87 F.3d at 42, and other cases).

In sum, the Ninth Circuit in *Overton* and *Smith* did not address the quantum or quality of evidence required to establish "use" under § 2251(a); the Second Circuit acknowledged in *Sirois*, which directly addressed what evidence is required to establish "use," that there is "an active component to the notion of 'use,'" but held that photographing a minor in order to create pornography suffices; and the Fourth, Eighth, and First Circuits also hold that the "use" element is satisfied if a minor is photographed in order to create pornography. Contrary to Wright's argument, there is no circuit split on the issue. We believe that these decisions are consistent with the ordinary understanding of "use" as well as the intent of the statute. We thus reject Wright's claim that the Government had to prove that he caused J.S. to engage in the conduct photographed and recorded.

### C. "Producing" Element of § 2251

Wright also argues that the Government failed to prove the "producing" element of § 2251(a) (defined in § 2256(3)). This argument pertains to counts 1 through 5. Counts 4 and 5 charged that in July and August 2009 Wright surreptitiously created videos of J.S. while he masturbated in front of a computer in Wright's office, and that Wright produced the videos using a camera and desktop computer that were manufactured outside of the State of Michigan.

Section 2256(3) provides that "'producing' means producing, directing, manufacturing, issuing, publishing, or advertising." As the Eighth Circuit observed in *Fadl*, "producing" is defined broadly and non-technically:

> Fadl's next contention concerns the meaning of the term "producing." "Producing" is defined as "producing, directing, manufacturing, issuing, publishing, or advertising." 18 U.S.C. § 2256(3). Fadl contends that this definition "implies directorial, editorial, or managerial role, and an ultimate goal of commercial production." Accordingly, Fadl asserts that because he neither took a directorial role nor intended that the photographs be disseminated commercially, his conduct was not punishable under the statute. We disagree. The fact that "producing" is retained in the definition and placed alongside other

terms indicates that Congress intended to retain a non-technical definition of the term "producing" (that is, in the sense of creating or making), but also sought to expand its scope to include activities that may not be generally considered to fall within the typical meaning of the term. We therefore conclude that list of terms in the definition reflects Congress's intention to enact a broad definition of "producing" that encompasses the varied means by which an individual might actively participate in the creation and distribution of child pornography.

*Fadl*, 498 F.3d at 866–67 (internal citation omitted). The First Circuit followed *Fadl* in *United States v. Poulin*, 631 F.3d 17 (1st Cir. 2011):

> We find that Congress did not intend so technical a definition of the term "produced" as Poulin would have it. Such a holding comports with Congress' list of assorted terms defining "producing," along with our own precedent and that of many of our sister courts. *See, e.g., id*. [18 U.S.C. § 2256(3) (defining "producing" as used in § 2251(a)]; *United States v. Ortiz–Graulau*, 526 F.3d 16, 19 (1st Cir. 2008) (interpreting § 2251(a) to require only that a visual depiction be made); *United States v. Fadl*, 498 F.3d 862, 867–68 (8th Cir. 2007) (finding Congress intended a nontechnical definition of "producing" and sought to include activities not generally considered to fall within the typical meaning of the term); *United States v. Smith*, 459 F.3d 1276, 1297–98 (11th Cir. 2006) (finding "producing" not unduly technical or ambiguous); *United States v. Angle*, 234 F.3d 326, 341 (7th Cir. 2000) (rejecting restrictive definition and holding that images copied onto computer diskettes are "produced"); *Robinson*, 137 F.3d at 653–54 (noting evidence of photographs taken with camera and film manufactured outside of state was offered to show "production" using materials shipped in interstate commerce); *United States v. Lacy*, 119 F.3d 742, 750 (9th Cir. 1997) (finding images copied onto computer were created and therefore "produced"). *But see United States v. Wilson*, 182 F.3d 737, 741–43 (10th Cir. 1999) (finding images recorded onto diskettes that traveled interstate insufficient to satisfy "production" requirement).

*Poulin*, 631 F.3d at 22.

The district court in the instant case concluded that although there was no direct evidence that Wright took the Florida photographs, there was sufficient circumstantial evidence that Wright actively participated in the creation of the photographs. Wright was in some of the photographs, the photos were taken in Wright's hotel room during a trip to Florida he arranged, the images were found on a thumb drive in Wright's office in Michigan, and Wright admitted taking nude photographs of J.S. when J.S. was under the age of eighteen. *Wright*, 2013 WL 164096, at *7–8. As to the video recordings of J.S. masturbating, the district court noted that

they were taken in Wright's home office and stored on the hard drive of Wright's computer. *Id.* at *9. We find no clear error in the court's factual findings and no legal error in its reliance on *Fadl* and *Poulin*, which interpret "producing" broadly and non-technically. Thus, the Government produced sufficient evidence that Wright "produced" the photographs and videos.

## III. Transporting

Finally, regarding count 6, Wright argues that although the Government was required to prove his "use" of a minor engaging in sexually explicit conduct, the district court mistakenly "seemed to accept that the crime was committed merely by transporting the visual depictions." Appellant Br. at 24. The district court's opinion is clear that it required the Government to prove both that the visual depictions involved the use of a minor engaging in sexually explicit conduct and that they were transported. *Wright*, 2013 WL 164096, at *11–12.

## IV.

We AFFIRM the district court in all respects.