**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 17a0360n.06

Case No. 16-5929

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jun 22, 2017
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| RONNIE MCCALL, | ) | DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |

**O P I N I O N**

BEFORE: SILER, McKEAGUE, and WHITE, Circuit Judges.

**McKEAGUE, Circuit Judge.** Ronnie Lee McCall challenges one count of his conviction related to the sale of his daughters to another man for illegal sex and the production of child pornography. He also challenges his sentence—life imprisonment—for procedural reasonableness. For the foregoing reasons, we affirm the conviction and sentence.

**I**

Ronnie and Connie McCall had custody of four children in Tennessee. The couple abused drugs. In 2011, David Berry approached the McCalls about having their minor daughters do some "modeling" for him. The parents agreed, brought over two of their girls, and allowed Berry to take pornographic photographs of the children. The girls were given $50, which was turned over to Ronnie McCall. This initial transaction began an ongoing arrangement between

the McCalls and Berry in which three of the McCalls' daughters were raped by Berry and forced into posing for pornographic pictures in exchange for money given to the parents. The children endured this cycle of abuse for roughly eighteen months.

Most relevant to this appeal, Connie and Ronnie McCall sent T.G., age 16, to Berry's apartment to have sex with him and pose for sexually explicit photographs on approximately 40 occasions. T.G. gave the money she received for her visits to Ronnie and Connie McCall. The parents knew Berry took pornographic photographs of and had sex with T.G. in exchange for the money. On one occasion, Berry asked the McCalls if he could take T.G. to Myrtle Beach with him for the weekend. They agreed, and arranged for the trip. In Myrtle Beach, Berry raped T.G. and took pornographic pictures of her. Afterwards, Berry gave her $800, which she gave to Ronnie McCall. The McCalls also allowed Berry to sexually assault and take pornographic pictures of their 12- and 14-year-old daughters on multiple occasions.

In 2012, the Office of Child Safety discovered evidence of neglect and drug use and removed all four children from the McCalls' residence and placed them in foster care. Connie and Ronnie McCall were arrested on felony child-neglect charges and released after posting bond. Meanwhile, T.G. told her new caregivers about the sexual abuse she had suffered while in the McCalls' custody, and police investigated. At Berry's residence, the investigators discovered a computer with over 300 pornographic images of T.G. and her younger sisters. The next day, Berry committed suicide. The McCalls fled and were eventually arrested as they attempted to make their way into Canada.

Following their arrest, a federal grand jury charged the McCalls with four counts: (1) selling a child by a parent or guardian for purposes of producing child pornography in violation of 18 U.S.C. § 2251A; (2) producing child pornography in violation of 18 U.S.C. § 2251(a); (3)

producing child pornography by a parent in violation of 18 U.S.C. § 2251(b); and (4) using a facility of interstate commerce to coerce a child to engage in illegal sexual activity in violation of 18 U.S.C. § 2422(b). Connie McCall pled guilty to the third count, testified against her husband, and was ultimately sentenced to 216 months' imprisonment.

Ronnie McCall went to trial. At the close of the government's evidence, McCall made a motion for acquittal. In response, the prosecution clarified the evidence it had presented as to each count. The prosecution said that Count One pertained T.G. and her trip with Berry to Myrtle Beach, Count Two related to Berry's production of child pornography in Tennessee with T.G., Count Three related to McCall's participation in producing pornographic images of his 12-year-old daughter, and Count Four related to the inducement of his 14-year-old daughter to engage in sexual activity with Berry. The court denied the motion and the jury convicted McCall on all four counts.

Prior to sentencing, the U.S. Probation Office prepared a Presentence Report. The report calculated Ronnie's advisory Guidelines range as life imprisonment based on a total offense level of 43 and criminal history category of II. In calculating the offense level, the report stated that Counts Two, Three, and Four had three victims each—rather than the single victim that the prosecution had identified in response to McCall's motion for acquittal. There were no objections to the Guidelines range calculations.

At sentencing, the district court considered the report and all relevant sentencing factors. The court was unequivocal in its conclusion that McCall should receive a life sentence. When considering the seriousness of the offense, the court did not mince words: "It's been 36 years now since I began my law practice . . . and in all those 36 years, I've never encountered a case with facts as horrible as these." R. 194, Sent. Tr., PID 1944–45. Indeed, the court said that

"even if the advisory guideline range were something less than life . . . the seriousness of the offense alone would justify a life sentence." *Id.* at PID 1945. Accordingly, after taking into account the Guidelines range and other sentencing factors, the court imposed a life sentence.

McCall appeals, challenging his conviction for violating 18 U.S.C. § 2251A (Count One) and claiming that the district court improperly calculated his sentencing Guidelines range.

**II**

*Sufficiency of the Evidence.* 18 U.S.C. § 2251A makes it unlawful to sell or otherwise transfer custody or control of a minor "with the knowledge that, as a consequence of the sale or transfer, the minor will be portrayed in a visual depiction engaging in, or assisting another person to engage in, sexually explicit conduct." McCall was convicted for violating this provision by transferring custody of T.G. to Berry for the trip to Myrtle Beach where he raped her and made pornographic images of her.

On appeal, McCall argues that the government failed to show that he knew Berry would be taking sexually explicit videos or photos of T.G. when they arranged for that trip. This failure, McCall says, means that we cannot sustain his conviction for violating 18 U.S.C. § 2251A because the government did not prove the "knowledge" element of the offense. In other words, although "McCall knew David Berry was having sex with T.G.—he even exhorted her to comply with Mr. Berry's demands for sex over five times," and even though "McCall knew David Berry sometimes took lewd pictures of T.G.," the government failed to show McCall knew T.G. "*would* be" portrayed in child pornography when he sent her with Berry to Myrtle Beach in exchange for money. Appellant Br. at 18.

When a defendant challenges a conviction for sufficiency of the evidence, we review de novo. *United States v. Wright*, 774 F.3d 1085, 1088 (6th Cir. 2014). We sustain a conviction if

"*any* rational trier of fact could have found the elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). The jury has "broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors draw reasonable inferences from basic facts to ultimate facts." *Coleman v. Johnson*, 132 S. Ct. 2060, 2064 (2012) (per curiam) (internal quotation marks and citations omitted). Thus, even "[c]ircumstantial evidence alone is sufficient to sustain a conviction." *United States v. Winkle*, 477 F.3d 407, 413 (6th Cir. 2007) (quoting *United States v. Brown*, 147 F.3d 477, 489 (6th Cir. 1998)).

Here, the government presented more than adequate evidence from which a rational juror could draw the reasonable inference that McCall knew Berry would make pornographic images of T.G. during the trip to Myrtle Beach. The government established that McCall was aware that Berry regularly took pornographic images of his children, including T.G., and forced them to perform sexual acts in exchange for money. In fact, evidence was presented that he was instrumental in arranging these exchanges and was the major financial beneficiary of the girls' exploitation. Thus, a rational juror could conclude McCall was aware that the ongoing pattern of child pornography production would continue during—and was a purpose of—the trip he helped arrange to Myrtle Beach. That is, a juror could conclude from the evidence presented that McCall knew Berry would create pornographic images of T.G. when they traveled there—even if the government did not present any direct evidence of that intention at the time the deal was struck. This reasonable inference is sufficient to sustain McCall's conviction for violating 18 U.S.C. § 2251A.

*Sentencing Guidelines Calculation.* Second, McCall challenges his sentence for procedural reasonableness based on the calculation of his advisory sentencing Guidelines range.

Because McCall did not previously object to the Guidelines range, we review for plain error. *United States v. Bostic*, 371 F.3d 865, 872–73 (6th Cir. 2004); Fed. R. Crim. P. 52(b). To show plain error, McCall must prove the existence of (1) an error (2) which was obvious, (3) affected his substantial rights, and (4) seriously affected the fairness or public reputation of the judicial system. *See Molina-Martinez v. United States*, 136 S. Ct. 1338, 1343 (2016).

McCall claims that the calculated range was based on an incorrect offense level because the presentence report based its advisory range on *three* victims for counts two through four even though, during trial, the prosecution specifically identified *one* victim for each count in response to McCall's motion for acquittal. According to McCall, the resultant one-point increase in his offense level incorrectly upped his advisory Guidelines range from "360 months to life" to "Life." Accordingly, McCall asks us to vacate and remand for resentencing.

We find no error in the Guidelines range calculation. It is well established that, at sentencing, a court is to consider all conduct relevant to the conviction, including uncharged conduct. *See* U.S.S.G. §§ 1B1.3, 1B1.1(H). In particular, for convictions under 18 U.S.C. §§ 2251(a) and (b) and 2422(b) (counts two through four), the Guidelines require the creation of "pseudo-counts;" that is, the exploitation of each minor victim is treated as "a separate count of conviction," whether the conduct related to each victim "is specifically cited" in the count of conviction or not. U.S.S.G. § 2G1.3(d)(1) & comment. (n.6); *id.* § 2G2.1(d)(1) & comment. (n.5); *see United States v. Martin*, 291 F. App'x 765, 769–70 (6th Cir. 2008). Here, the evidence was more than sufficient to support the district court's conclusion that each child was a victim of the conduct for which McCall was convicted under counts two through four. Thus, the district court was required to treat each victim separately for those counts. Further, to the extent that McCall's argument could be construed as a challenge to the district court's application of the

grouping rules found in § 3D1.2, counts two and three are excluded from grouping. U.S.S.G. § 3D1.2(d)(1) (specifically excluding offenses controlled by § 2G2.1(d)(1) from being grouped); *see Martin*, 291 F. App'x at 771. Nor did the district court err by not grouping the count four pseudo-counts. U.S.S.G. § 3D1.2, comment (backg'd.) ("Counts involving different victims . . . are grouped together only as provided in subsection (c) or (d)."). In short, McCall has not shown error in the calculation of his Guidelines range.

Further, even assuming that the applicable Guidelines range was incorrect, the outcome would not change in this case. Ordinarily, an error in calculating the advisory Guidelines range could call an imposed sentence into question because courts use the recommended Guidelines range as the "lodestar" in determining an appropriate sentence—adjusting a final sentence up or down based on the initially recommended range. *See Molina-Martinez*, 136 S. Ct. at 1346. But where a sentence is imposed *irrespective* of the advisory Guidelines range, an error in calculating that range does not, without more, invalidate the sentence. *Id.* at 1346–47. This is because "[t]here may be instances when, despite application of an erroneous Guidelines range, a reasonable probability of prejudice does not exist." *Id.* at 1346; *see also United States v. Mor*rison, 852 F.3d 488, 491 (6th Cir. 2017). That is,

> [t]he record in a case may show . . . that the district court thought the sentence it chose was appropriate irrespective of the Guidelines range. Judges may find that some cases merit a detailed explanation of the reasons the selected sentence is appropriate. And that explanation could make it clear that the judge based the sentence he or she selected on factors independent of the Guidelines. The Government remains free to "poin[t] to parts of the record"—including relevant statements by the judge—"to counter any ostensible showing of prejudice the defendant may make."

*Molina-Martinez*, 136 S. Ct. at 1346–47 (quoting *United States v. Vonn*, 535 U.S. 55, 68 (2002)).

In such an "unusual circumstance," showing there was an error in an advisory Guidelines range is not enough to show the defendant suffered prejudice. *See id.* at 1347.

The record in this case contains the "unusual circumstance" *Molina-Martinez* described. Here, the court gave McCall a life sentence based on a detailed explanation of factors independent of the advisory Guidelines range. *See* R. 194, Sent. Tr., PID 1943–50. Specifically, the court found that the seriousness of the offense, general and specific deterrent effects, and the total absence of any mitigating factors all called for a life sentence. *Id.*; *see also* 18 U.S.C. § 3553; U.S.S.G. § 1B1.1. Indeed, the court said it would have found a life sentence proper "even if the range were something less than life." R. 194, Sent. Tr., PID 1945. Thus, even if McCall *were* able to show his advisory range was incorrectly calculated, he has not shown the "reasonable probability of a different outcome" under a reduced Guidelines range.[1] *See Molina-Martinez*, 136 S. Ct. at 1346.

### III

For the foregoing reasons, we affirm McCall's conviction and sentence.

---

[1] And while not dispositive, it is worth noting that *even if* the court were to recalculate McCall's Guidelines range as he requests, a life sentence would remain within the new range. Given the sentencing court's certainty that McCall deserved life imprisonment for his crimes and the fact that the recalculated range would continue to include life imprisonment, it is unrealistic to think the court would impose a lower sentence on remand.