NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0059n.06

Case No. 23-5497

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| | ) | **FILED** |
| UNITED STATES OF AMERICA, | ) | Feb 03, 2025 |
| Plaintiff-Appellee, | ) | KELLY L. STEPHENS, Clerk |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TENNESSEE |
| AYANA SAUNDERS, | ) | |
| Defendant-Appellant. | ) | OPINION |

Before: BATCHELDER, MOORE, and BUSH, Circuit Judges.

**ALICE M. BATCHELDER, Circuit Judge.** A jury found that Ayana Saunders was involved in a conspiracy to send fraudulently obtained money to Nigeria and convicted her of conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349, and conspiracy to commit money laundering in violation of 18 U.S.C. §§ 1956(h) and 1956(a)(1)(B)(i). On appeal, Saunders argues that the evidence presented at trial was insufficient to convict her, that the government's evidence presented at trial was a variance from the indictment, and that venue in the Western District of Tennessee was improper. We disagree and affirm district court's judgment.

**I.**

This case arises out of a 2017 investigation into a fraudulent real estate transfer in Memphis, Tennessee, where the FBI uncovered evidence of a large-scale wire fraud and money laundering conspiracy. The evidence revealed a large web of conspirators who used various fraudulent pretenses to obtain funds from victims, then transferred the money to Nigeria. After law enforcement began investigating this scheme, it grew suspicious of Saunders as some of the

money obtained from the scheme was sent to her bank accounts. Based on her bank account activity, law enforcement suspected that Saunders was acting as a "money mule" for the conspiracy. A money mule is a member of a conspiracy who receives fraudulently obtained funds and wires the funds internationally, typically within one to three days of initial receipt. A grand jury charged Saunders, along with three co-defendants, with conspiracy to commit wire fraud and conspiracy to commit money laundering.

At trial, the government presented evidence that Saunders fit the description of a money mule as she regularly received large sums of money domestically, kept a portion for herself, and, within a few days, sent the rest of the money to an international account. Saunders would occasionally disguise the nature of a transaction by "chopping" the deposit (breaking up the initial payment into smaller amounts) and "layering" the payments (sending smaller sums of the initial payment to her other personal accounts) before wiring the money internationally. She also had numerous accounts that were frozen or closed after being open for only few months. Victims of the scheme testified that they were directed to send money to Saunders would not have done so had they known the money would be sent internationally.

Saunders testified in her defense that she believed the money coming into her accounts was for the legitimate purpose of funding a movie she was directing with her husband and co-defendant, Caesar Oruade. At the close of the trial, Saunders moved for a judgment of acquittal, arguing that there was insufficient evidence to convict her of a conspiracy because there was no proof of an agreement between her and the other conspirators. The court denied the motion, stating that there was "some indication of some agreement" between Saunders and Oruade. The jury convicted Saunders of conspiracy to commit wire fraud and conspiracy to commit money laundering and the district court sentenced her to 60-months' imprisonment. Saunders now appeals.

**II.**

We review de novo a district court's denial of a motion for judgment of acquittal. *United States v. Osborne*, 886 F.3d 604, 607–08 (6th Cir. 2018). The relevant question when considering a sufficiency of the evidence challenge is whether, when viewing the evidence in a light most favorable to the prosecution, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 608 (emphasis in original) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). We draw all reasonable inferences and credibility determinations in the jury's favor and cannot substitute our credibility determinations for those of the jury. *United States v. Tragas*, 727 F.3d 610, 617 (6th Cir. 2013); *Osborne*, 886 F.3d at 608. We will reverse a jury conviction only if, "viewing the record as a whole, the judgment is not supported by substantial and competent evidence." *United States v. Wright*, 774 F.3d 1085, 1088 (6th Cir. 2014) (quoting *United States v. Blakeney*, 942 F.2d 1001, 1010 (6th Cir. 1991)). Under this deferential standard, circumstantial evidence alone is sufficient to sustain a conviction. *United States v. Fekete*, 535 F.3d 471, 476 (6th Cir. 2008).

**A.**

Saunders argues first that the evidence was insufficient to sustain her conviction for conspiracy to commit wire fraud. To prove such a conspiracy the government must show that (1) "two or more persons conspired, or agreed, to commit the crime of [wire fraud]" and (2) "that the defendant knowingly and voluntarily joined the conspiracy." *United States v. Rogers*, 769 F.3d 372, 377 (6th Cir. 2014). However, a defendant need not know every member of the conspiracy or the full extent of the enterprise for a conspiracy conviction to be upheld. *United States v. Maliszewski*, 161 F.3d 992, 1006 (6th Cir. 1998). And because circumstantial evidence is sufficient to prove conspiracy, the government does not need to bring direct evidence that Saunders

and her co-conspirators created a formal plan; instead, "evidence of a tacit agreement or mutual understanding," *id.*, and a showing that she actively participated in furthering a criminal objective suffice, *Fekete*, 535 F.3d at 476.

The evidence presented at trial shows as much. Saunders argues that the district court erred in determining that there was an agreement between Saunders and Oruade; at most, she argues, she "assisted" a conspiracy between Oruade and others but did not do enough to warrant a conviction. Despite the lack of direct evidence of an agreement, however, the evidence shows that the co-coconspirators directed that the fraudulently obtained money be wired to Saunders, that Saunders would then accept the large sums of money that were wired into her accounts, and that she then transferred the money to Nigeria while keeping a portion of the money for herself. Not only would Saunders accept the money, but she would also "chop" and "layer" the money, attempting to make it look clean before she wired it internationally. If the money were legitimately obtained as investments into Saunders's movie, there would be no need to take these further actions. Saunders's actions could lead any rational trier of fact to believe that she agreed to conspire to commit wire fraud and agreed to join the conspiracy. *See Osborne*, 886 F.3d at 607–08.

**B.**

Saunders also challenges her conviction for conspiracy to commit money laundering. The government's burden here is to prove "(1) that two or more persons conspired to commit the crime of money laundering, and (2) that the defendant knowingly and voluntarily joined the conspiracy." *United States v. Prince*, 618 F.3d 551, 553–54 (6th Cir. 2010). The connection between the defendant and the conspiracy can be slight, but there must be more than mere association to establish participation. *United States v. Gardner*, 488 F.3d 700, 711 (6th Cir. 2007).

4

Saunders admits that in keeping a portion of the money for herself and wiring the remainder of the funds internationally, she played a role in controlling and transferring money. She argues, however, that the proof connecting her to the conspiracy is insufficient to show that she knew the funds were obtained as part of an unlawful conspiracy. But circumstantial evidence is sufficient to maintain a conviction and we defer to the findings of the jury. *Tragas*, 727 F.3d at 617; *Fekete*, 535 F.3d at 476. Although not every member of the conspiracy knew each of the other members, Saunders was a connecting link in that conspiracy; she knowingly accepted the money from multiple sources, moved it through her accounts to an international account, and kept a portion of it all in furtherance of the conspiracy. The government properly established Saunders's connection to the conspiracy.

Despite Saunders's claims that she thought the money was investments into her movie, the money she obtained was far greater than the film's budget. The initial budget for the film was $28,000 yet Saunders received nearly $300,000 from the scheme's victims. Saunders's "chopping" and "layering" of the money indicates that she "kn[ew] that the transaction [was] designed in whole or in part to disguise the nature, location, source, ownership or control of the proceeds." *Prince*, 214 F.3d at 747. Saunders did not passively allow the funds to flow in and out of her accounts; rather she actively managed the money coming into her account and kept ten to twenty percent of each payment she received. Further, the government presented evidence of emails sent from Saunders's email server to Oruade's email and then deleted from Saunders's server, in which she discussed details of the wire transactions. These are all signs of knowing fraudulent behavior showing that a rational juror could conclude that Saunders knew the funds were obtained fraudulently.

Saunders essentially asks us to reweigh the jury's determination of her credibility, but we do not second guess the jury. *Tragas*, 727 F.3d at 617; *Osborne*, 886 F.3d at 608. Therefore, Saunders does not sustain the heavy burden of showing that the government's evidence was insufficient. *See United States v. Abboud*, 438 F.3d 554, 589 (6th Cir. 2006).

## C.

Saunders also claims that the evidence presented by the government at trial constituted constructive amendment of or variance from the indictment. We review these claims de novo because she raised this objection at trial. *United States v. Kuehne*, 547 F.3d 667, 682 (6th Cir. 2008). Saunders bears the burden of proving that an amendment or variance occurred. *Id.* at 683.

An actual amendment occurs when "the prosecutor actually changes the text of the indictment," *United States v. Budd*, 496 F.3d 517, 521 (6th Cir. 2007), whereas a constructive amendment occurs when the prosecution presents evidence and jury instructions that (1) modify the essential elements of the charges and (2) create a substantial likelihood that the defendant was convicted of an offense not in the indictment, *Kuehne*, 547 F.3d at 683. A variance occurs when the indictment remains the same, but the evidence presented at trial proves facts materially different from those alleged in the indictment. *United States v. Bradley*, 917 F.3d 493, 502 (6th Cir. 2019). Constructive amendments are "per se prejudicial because they infringe upon the Fifth Amendment's grand jury guarantee." *United States v. Hynes*, 467 F.3d 951, 962 (6th Cir. 2006) (cleaned up). A variance, on the other hand, is not per se prejudicial and requires that the defendant show her substantial rights were affected. *Id.*

Saunders was indicted for participating in conspiracy to defraud, which included the conspiracy to commit wire fraud and to launder money; however, she argues that at trial, the government presented evidence of multiple unconnected conspiracies, varying from the

indictment. This argument fails because the Superseding Indictment charged Saunders with conspiracy to commit wire fraud (Count 1) and conspiracy to money launder (Count 3) through incorporating paragraphs one through 36 of the indictment which sets forth the over-arching conspiracy to defraud. *See* Superseding Indictment, R.41, PageID#87, 95–96. Further, Saunders admitted that the fraudulently obtained money was wired into her accounts, from which she then wired the money internationally, showing that she was a part of a common scheme to defraud alleged in the indictment.

Despite Saunders's claims, the evidence presented at trial is unlike the situation in *United States v. Mize*, as the evidence showed Saunders's activities to be a consistent link throughout one large conspiracy. 814 F.3d 401, 409–12 (6th Cir. 2016) (holding that the prosecution varied from the indictment because it introduced "extraneous and highly prejudicial evidence" of a similar but distinct uncharged conspiracy to illustrate how the charged conspiracy operated). Here, the government showed that each fraudulent transaction was not an isolated incident but was a part of a larger conspiracy to wire money to Nigeria.

## III.

We review the district court's interpretation of the venue statute de novo and the district court's decision finding venue proper for abuse of discretion. *United States v. Brika*, 416 F.3d 514, 527 (6th Cir. 2005). Venue is proper in the district where the crime was committed, U.S. Const. art. III, § 2, cl. 3, and because a criminal conspiracy may occur in numerous districts, multiple venues may be appropriate, *United States v. Crozier*, 259 F.3d 503, 519 (6th Cir. 2001). For criminal conspiracy, venue is "proper in any district where the conspiracy was formed or where an overt act in furtherance of the conspiracy was performed." *Id.*; 18 U.S.C. § 1956(i)(2) (prosecution for conspiracy to commit money laundering "may be brought in the district where

venue would lie for the completed offense . . . or in any other district where an act in furtherance of the attempt or conspiracy took place").

On appeal, Saunders argues that venue was improper regarding Count III because there was no connection between the conspiracy to money launder and the Western District of Tennessee. This argument fails, however, as Saunders admits there was a connection to the district through the scheme involving Allison Hames (though she denies she was connected to the theft of Hames's down payment). As stated above, there was sufficient evidence to find Saunders guilty of conspiracy to commit wire fraud and money laundering, and the fraud against Hames in the Western District of Tennessee was in furtherance of the greater conspiracy. This connection satisfies the requirements for proper venue, and the district court did not abuse its discretion in denying Saunders's motion to dismiss for improper venue.

## IV.

For the foregoing reasons, we affirm the judgment of the district court.